R. W. GUILLOD, RESPONDENT, v. KANSAS CITY POWER & LIGHT COMPANY, APPELLANT.

Kansas City Court of Appeals. June 10, 1929.

*Otto & Potter* and *B. J. George* for respondent.

*Johnson, Lucas & Graves, Wm. C. Lucas* and *Ludwick Graves* for appellant.

ARNOLD, J.—This appeal is from an order and decree of the circuit court of Jackson County, Missouri, affirming the final award of the Missouri Workmen's Compensation Commission.

The claim was submitted to the circuit court upon a certified copy of the record by the Compensation Commission. and included, among other things, a stipulation as to the facts, in which it was agreed the same might be considered as the facts in the claim of R. W. Guillod v. Kansas City Power & Light Company for an injury resulting in a right inguinal hernia sustained by plaintiff while in the employ of defendant. It is agreed the accident occurred on February 5, 1927, while claimant, a service foreman, and E. L. Campbell, a meter setter, were engaged in running a service from the wires of defendant in the rear of 3840 East 68th Street Terrace in Kansas City, Mo., to the residence at that address. After the work had been completed claimant picked up the coil of the remaining wire, weighing approximately 100 pounds, in an effort to place it in a service truck. He felt a sharp pain in the right side and immediately let the coil drop to the ground. A few minutes later he again picked up and lifted the coil into the truck. When first lifted, the coil did not slip out of his hands or fall against him, nor did he slip or fall in lifting it, but voluntarily dropped it after he felt the pain in his right side. Claimant lifted the coil in the usual and customary manner. Shortly after the pain in his right side, he became nauseated for a few minutes and has noticed this nausea for short periods on several occasions since. He continued to work all that day, which was Saturday, and all of the following Monday, February 7, 1927, when at about five o'clock P. M. he called upon Doctor Clarence McGuire, who diagnosed the case as right inguinal hernia at the same place where on December 29, 1924, this doctor had operated upon claimant for the same thing. Defendant's doctor, W. C. Iuen, who knew nothing of the prior operation, also diagnosed claimant's case as right inguinal hernia. On December 17, 1924, while working for this defendant in setting a pole with a pipe, the claimant received a right inguinal hernia, and on December 24, thereafter, for and in consideration of $100, he executed a release for any claim he might have had from said rupture, as follows:

"Know all men by these presents, that I, R. W. Guillod, of 3211 Main St., Kansas City, Missouri, for the sole consideration of the sum of One Hundred Dollars to me paid by the Kansas City Power & Light Company, the receipt of which is hereby acknowledged, do here-

by release and forever discharge said Kansas City Power & Light Company, its successors and assigns, from all actions, causes of actions, suits, controversies, claims and demands whatsoever for or on account of injuries received to the person or damages caused to the signer hereof, or either of them, and especially on or about the 17th day of December, 1924, at or near North Kansas City, 18th and Flora. Mr. R. W. Guillod claimed to have received a rupture, December 17, 1924. This release is for all injuries that are now apparent or may hereafter arise.

"It is expressly understood and agreed that said sum of One Hundred Dollars is the sole consideration of this release and the consideration stated herein is contractual and not a mere recital; and all agreements and understandings between the parties are embodied and expressed herein. I fully understand all matters herein contained, and without solicitation sign this release."

Claimant based his claim for compensation for his hernia of February 5, 1927, upon the facts above stated. It is learned from letters and other documents submitted in connection with the claim that Doctor McGuire, in the latter part of 1925, found no protrusion of the old hernia of December 17, 1924. It is shown by the same documents and letters that the operation for the hernia in February, 1927, also was performed by Dr. McGuire; that claimant apparently had recovered therefrom, as he resumed his work April 20, 1927, having been off work for a period of nine weeks.

After the usual preliminary hearings and awards, a final award was made by the Compensation Commission, allowing claimant the sum of $250, for medical aid, and for temporary total disability $20 per week for nine weeks, or $180. Timely notice of appeal was given and the case was certified to the circuit court of Jackson County, where a trial on the record resulted in a judgment and decree sustaining the award of the commission, after the refusal of five declarations of law asked by defendant. A motion for a new trial was overruled and defendant appealed to the Supreme Court which tribunal ruled no constitutional question is involved and that court is without jurisdiction to consider the appeal. The cause thereupon was certified to this court for review.

There are three assignments of error (1) that the court erred in sustaining the final award of the commission, (2) in refusing defendant's declarations of law 1, 2, 3, 4 and 5, and (3) in overruling defendant's motion for a new trial. Under the first point it is urged that, as a matter of law, and particularly within the meaning of section 7b of the Compensation Law, there was no accident forming a basis for the claim; and that the court erred in refusing defendant's declaration 1, as follows:

"The defendant-appellant asks the court to declare the law to be, that under the facts in this case, as a matter of law, there was no accident within the meaning of the Missouri Workmen's Compensation Law, and particularly within the meaning of section 7-b of the Missouri Workmen's Compensation Law."

Section 7b of the act defines "accident" and "personal injury" in the following language (pp. 495, 496, Session Laws 1927) :

"The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom."

It is argued these definitions were taken *verbatim* from section 3, 3075, Revised Statutes Nebraska 1922, and that the Supreme Court of Nebraska, in cases decided prior to the adoption of the Missouri Workmen's Compensation Act, construed the term "an unexpected or unforeseen event, happening suddenly and violently" to relate more to effect than to cause, and that the doing of a usual thing in the usual manner is an accident if the result is unexpected or unforeseen.

It has been held in Missouri that when we adppt a statute of another State, we adopt it with the prior construction placed upon it by the courts of such State. [State ex rel. Westhues v. Sullivan, 283 Mo. 546, 578, 224 S. W. 327.] It is admitted by defendant in its brief that the construction placed upon a statute of another state by its highest court prior to the adoption of such statute by this State is "persuasive" upon our appellate courts in construing said statute after its adoption by this State; but it is argued that the holding of the Missouri Commission and the construction of the Nebraska courts as applied to our section 7b of the Act, is erroneous and out of line with the expressions of our Supreme Court in construing the term "accident," and that the Nebraska rule should not be followed. It is pointed out in this connection that claimant lifted the coil of wire in the usual and ordinary way, as he had done before; that it did not slip or strike him to cause any wrench or strain, nor did he slip or fall while he had the coil in his hands so as to cause a wrench, twist or strain. There was nothing unusual or out of the ordinary, under the facts, nor was there any external force which caused the recurrence of the hernia.

Defendant construes the act to mean that some "unexpected" or "unforeseen" occurrence must happen "suddenly and violently" and that such unexpected, unforeseen, sudden and violent happening must produce the result or injury complained of; otherwise the result is

not an accident and therefore not compensable. In other words, to be an accident within the meaning of the statute, defendant declares there must be (1) an unexpected or unforeseen occurrence happening suddenly and violently; (2) producing or causing an injury; and that the absence of either of these elements makes it a case of no accident. It is further urged on this line the act requires there shall be an "objective symptom of the injury;" that under the facts here presented there was no objective symptom of an injury such as a cut, bruise or contusion; nor was there at the time any noticeable protrusion at the seat of the hernia and it was not discovered until three days later, and then by the examination of a physician. It is urged also that there was no proof that the hernia, as found, had not existed prior to February 5, 1927, which the commission held; and there is no evidence that the last hernia had not been gradually coming on. There was no dispute that a prior hernia had existed showing an inherent weakness there. It is contended the facts found by the commission and sustained by the trial court, do not support the award, and that there was not sufficient competent evidence in the record to warrant the conclusions reached.

Defendant leans heavily for support in the above contention on Caldwell v. Insurance Co., 305 Mo. 619, 267 S. W. 907. In that case the Supreme Court was dealing with the construction of an insurance policy as applied to the term "external, violent and accidental means." The opinion states (l. c. 625): "There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen."

"The other line of cases holds that where injury or death is the unusual, unexpected or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip or anything out of the ordinary in the act or event which caused such injury or death."

In the Caldwell case the insured was operated on for abdominal inguinal hernia, and the petition alleged that in the operation accidental and unavoidable injuries were inflicted upon the abdominal organs; that, as a result of the operation "accidental thrombosis and accidental intestinal obstruction followed from the operation and injuries aforesaid and as a direct result thereof" the insured died, "within ninety days from date of accident." The insured held two policies of accident insurance providing that indemnity should be paid for death only when it resulted from bodily injuries, independent of

all other means, through accident and accidental means. In its discussion of the meaning of the term ''accidental means'' as applied to the facts in that case, the court adopted the first of the two theories above indicated, saying, 1. c. 659, 660:

''As above indicated, the rule that injury or death is produced by accidental means when the result is unusual or unforeseen, seems largely to be built upon a misconception of the case of U. S. Mutual Accident Assn. v. Barry, 131 U. S. 100, above discussed. That case clearly lays down the rule contended for by defendant in the case at bar. In discussing 'accidental means' Mr. Justice BLATCHFORD most correctly said that the jumping off the platform was the *means* causing the injury and that the question submitted to the jury was whether there occurred anything accidental, unforeseen, involuntary or unexpected *in such act of jumping*, that is, in the means which produced the injury, from the time deceased left the platform until he alighted upon the ground. That which occurred when Dr. Barry alighted upon the ground was clearly the result. It was not enough that the result was unexpected, unforeseen or out of the ordinary. The learned justice then laid down the proposition, which seems to me is decisive of this case and fully sustains defendant's contention here 'that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted from accidental means.' Could language be plainer? The words 'in a not unusual or unexpected way' plainly modify the verb 'employed' and not the preceding verb 'follows.' If the language could possibly be made plainer it would be by saying that where the means which causes the injury was voluntarily employed in the usual and expected way, the resulting injury is not produced by accidental means even though such resulting injury is entirely unusual, unexpected and unforeseen.''

It is claimant's contention that the Caldwell case is not applicable to the Workmen's Compensation Law, because (1) it was decided before the operation of that law and was not based upon the definition of an injury by accident as contained in the Missouri Compensation Act, and as construed by the Nebraska courts; and (2) because the insurance policy provided, in substance, that the injury to plaintiff should be produced independent of all other means by external and accidental means.

We think plaintiff's position in this respect is proper. The definition in the opinion is very different from that contained in Section 7b of the Compensation Act, where the word—

"accident shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event."

It is clear that an event need not necessarily be a cause but may be and generally is a result, and the word is so used in the Missouri Compensation Act. As already stated, the Caldwell case recognizes the fact that in many states an accident is defined as the unusual, unexpected and unforeseen result of an intentional act. And as this definition conforms to that employed in the act itself, there is every reason why it should be adopted here. It should be remembered that in the Caldwell case the court based its construction and drew its conclusions from decisions theretofore rendered without a guiding statute defining the terms used, such as we now have in Section 7, of the Compensation Act. Of course we are not undertaking to overrule the Supreme Court but are attempting to follow the plain letter of the statute. As already stated, our Compensation Act was taken from the Nebraska statute and we adopted the construction given to it by the Supreme Court of that State.

In the case of Manning v. Pomerene, 101 Neb. 126, the Supreme Court had under consideration this very question. The facts in that case as stated in the opinion are as follows:

"The plaintiff was a steam-fitter's helper employed by the defendant, who was engaged in the heating and plumbing business. While engaged in attending to a boiler for the defendant, the plaintiff attempted to move two steel 'I' beams resting about three feet from the floor by pushing against the beams with his body. He did this once or twice, when he felt faint and sick, and was compelled to sit down. He was unable to work during the remainder of the day. He worked the next day at overseeing some other men. The next day was Sunday. He felt sick and faint during this time, but was able to take a walk that day. On Monday he felt worse, and that night he vomited blood, and has since been unable to work."

In that case, as here, the defendant said "no objective symptoms" of an injury appeared at the time and the "plaintiff did not suffer an accident as defined in the statute." The court held:

"As to the second point, defendant's argument is that under the definition of the word 'accident' in section 3693, Revised Statutes 1913, no accident happened. The statute provides: 'The word "accident" as used in this article shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.' It is insisted that no 'unexpected or unforeseen event, happening suddenly and violently,' occurred; that sickness arising from the placing of his body by plaintiff against the beams and surg-

ing back and forwards could not reasonably be said to be 'an un-foreseen event;' and that it did not happen suddenly and violently except as it was produced by the plaintiff himself. It is said that this language is 'clearly meant to limit recoveries to accident such as the breaking of machinery, or the unexpected cutting or wounding of employee's person by some breaking or falling or exploding of apparatus, machinery, or tools.' To hold this would unduly limit the meaning of this clause. . . . We agree with this argument so far that the accident must produce 'at the time objective symptoms of an injury,' but the difficulty is as to what constitutes objective symptoms. Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen, or ascertained by touch. We are of opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly voluntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.''

In the case at bar claimant testified that when he first lifted the coil of wire there was a sharp pain in his side; that he was nauseated; that he had recurrent nausea over Sunday and Monday following and on the last named day he went to Dr. McGuire who examined him and pronounced his trouble inguinal hernia. And, as in the Nebraska case, the trial court sitting as a jury found the facts established the occurrence of an accident. We think there was no error in so holding.

To the same effect is the case of Young v. Furniture Co., 101 Nebr. 696, 701, decided October 13, 1917. We quote from that opinion:

''Held the death was an accident in the sense that it was unexpected, and it was not such a result as would naturally follow the employment, but grew out of it and the decedent died because of it.'' See also the cases of Kanscheit v. Laundry Co., 101 Nebr. 702, citing with approval the Manning case, and Van Vleet v. Pub. Service Co., 111 Nebr. 51, also approving the ruling in the Manning case. The same rule has been applied in other jurisdictions in construing Compensation Acts similar to ours. [Bidnick v. Armour & Co., 214 Pac. (Kans.) 808; Bystrom v. Jacobson, 155 N. W. (Wis.) 919; United Paper Board Co. v. Lewis, 117 N. E. (Ind.) 276; Poccardi v. Pub. Serv. Com., 84 S. E. (W. Va.) 242; N. Y. Switch & Crossing Co. v. Mullenach, 103 Atl. (N. J.) 803; Ward v. Creamery Co., 230 Pac. (Okla.) 872; Railroad v. Kerrick, 199 S. W. (Ky.) 44.] We must hold therefore, the trial court was not in error in refusing defendant's declaration of law No. 1.

It is also charged the court erred in refusing defendant's declaration of law No. 2, as follows:

"The defendant-appellant asks the court to declare the law to be, that under the facts in this case, as a matter of law, there was no accident within the meaning of the Missouri Workmen's Compensation Law, and particularly within the meaning of section 7-b of said Missouri Workmen's Compensation Law, when read and construed in conjunction with section 17-b of the Missouri Workmen's Compensation Law."

On this point it is urged the term "accident," as defined in Section 7-b of the act, must be construed in connection with section 17-b thereof which relates especially to hernia and is as follows:

"In all claims for compensation for hernia resulting from injury arising out of and in the course of the employment, it must be definitely proved to the satisfaction of the commission: First, that there was an accident resulting in hernia; second, that the hernia appeared suddenly, accompanied by intense pain; third, that the hernia immediately followed the accident; fourth, that the hernia did not exist in any degree prior to the accident resulting in the injury for which compensation is claimed."

The contention is that claimant failed to prove: (1) That there was an accident resulting in hernia; (2) that the hernia appeared suddenly accompanied by intense pain. In what we have already said, the first of these points is decided against defendant. As to the second, the facts and findings of the Commission show that there was no award of compensation for claimant under the provisions of section 17-b. The Commission ruled that claimant's condition on February 5, 1927, was the result of an injury to, or aggravation of, the old hernia of December, 1924. The compensation consisted, first, of an award of $250 for medical, surgical and hospital treatment under the provisions of paragraph (a) of section 13, which reads as follows:

"In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required for the first sixty days after the injury or disability, to cure and relieve from the effects of the injury, not exceeding in amount the sum of two hundred and fifty dollars, . . ."

Second, $180, for temporary total disability for nine weeks at $20 per week, under the provisions of section 15, of the act, as follows:

"For temporary total disability the employer shall pay compensation for not more than four hundred weeks during the continuance of such disability, but not less than six dollars nor more than twenty dollars a week, with full wages if the average earnings amount to less than six dollars a week."

The record shows claimant was not asking and was not awarded any compensation for permanent partial disability resulting from the original hernia. [Sec. 17-b.] Therefore our ruling must be gov-

erned by the provisions of sections 7-b, 13 and 15, of the act, which are not in conflict with section 17-b. There was no error in the refusal of declaration of law No. 2.

The court also refused declaration of law No. 3, and this is charged as error. This reads as follows:

"Defendant-appellant asks the court to declare the law to be, that under the facts in this case, as a matter of law, the hernia suffered by plaintiff-respondent is not compensable under the provisions of the Missouri Workmen's Compensation Law, and particularly under the provisions of section 17-b of the Missouri Workmen's Compensation Law, and that the plaintiff-respondent is not entitled to temporary total disability and medical aid as allowed in the award of the Missouri Workmen's Compensation Commission."

This point is ruled against defendant's contention in what we have said under point 2, and we need not pursue the discussion.

It is also urged the court erred in refusing defendant's declaration of law No. 4, as follows:

"The defendant-appellant asks the court to declare the law to be, that under the facts in this case, as a matter of law, the release executed by the plaintiff-respondent for the previous hernia, which release was executed December 24, 1924, is a bar to any claim for the recurred hernia, which occurred February 5, 1927."

This assignment refers to the release quoted above which was executed by claimant relating to the prior injury and resulting hernia. It is defendant's contention that the release of December 24, 1924, bars recovery herein because the hernia upon which the award was made was a recurring one. We are not in accord with defendant's view in this respect. In making the award the Commission pointed out there is a distinction between a claim for hernia resulting from an accident and one for aggravation of an existing hernia caused by an accident. The one is for hernia itself and the other for an injury to the hernia already existing. The hernia is simply a part of the body that was injured, and for such an injury compensation is payable as for similar injuries to other parts of the body, and such compensation would be medical aid, temporary disability and for any permanent injury other than the hernia caused by the accident. The award herein was for medical aid and temporary total disability only. It is the law that a general release from all future liability arising out of one cause of action does not bar an action for aggravation of the same injury arising out of a subsequent cause of action. In an action for negligence a release amounting to a contract against future negligence, of course, would be void as applied to another or independent injury. Contracts against liability imposed by the common law or by statute, are held to be void. [Hartman v. Railway, 192 Mo. App. 271, 182 S. W. 148.] It is said in Railroad v. Kerrick, 199 S. W. (Ky.) 44:

"The law is that one may recover for an injury which aggravates an existing one, or develops a latent one so as to increase the pain and suffering or results in permanent impairment of the injured person."

It was held in that case that one who had a hernia may recover where another accident caused a new hernia, or greatly aggravated the first. [Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709; Gillogly v. Dunham, 187 Mo. App. 551, 174 S. W. 118.] We hold the trial court did not err in refusing defendant's declaration of law No. 4.

Finally it is charged the court erred in refusing defendant's declaration of law No. 5, which asked the court to declare the law to be that the award of the commission is contrary to section 10, Art. II, of the Constitution of the State of Missouri, in that the release signed by claimant dated December 24, 1924, is a valid contract, and the award of the Compensation Commission in this case is an impairment of an existing contract. In view of the mandate of the Supreme Court, and our limited jurisdiction in this respect, we need not discuss this point.

We find no reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.