JOE MOYER ET AL., RESPONDENTS, v. OREK COAL & MINING CO., APPELLANT.—82 S. W. (2d) 924.

Kansas City Court of Appeals. May 13, 1935.

*Philip J. Fowler* and *W. E. Shirley* for respondent.

*Sam H. Ellison* for appellant.

SHAIN, P. J.—This action arises out of an award made by the Missouri Workmen's Compensation Commission.

The petitioners for compensation are the father and mother of Basil Moyer, now deceased, who was a minor of the age of twenty years, one month and three days at the time of his death.

The claim for compensation is against the Orek Coal Company, a corporation.

It appears that the aforesaid corporation operated a coal mine in Adair County, Missouri, and that Basil Moyer, deceased, was an employee of said company in the capacity of shot firer in the company's mines.

The following stipulation was had in the hearing before the commission:

"It is hereby stipulated and agreed by and between the parties hereto that Basil Moyer was employed by the Orek Coal Company, incorporated on or about February 1, 1932; that the employee had not rejected the act and that the employer had over ten men in its employment and had not rejected the act; that the employer did not carry compensation insurance. It is agreed that the employer had notice of the alleged accident occurring on or about February 1, 1932, and that the dependent's claim for compensation was filed within the time prescribed by law. It is further agreed that the average wage of the employee is $12.96, which is based upon a daily wage of $3.37 for a two-hundred-day year, this being a seasonable employment and operating for a period of less than two hundred days. It is further agreed that the employee died on February 1, 1932."

It appears from the evidence that a miner prepared shots for blasting out the coal. In so preparing, the miner drills a hole into the coal, this hole is tamped with powder and a fuse is so placed that a part of it hangs out; the other end being in contact with the powder. After this work is done, the shot firers go around and fire the shots.

On February 1, 1932, Basil Moyer and one Ed White proceeded in the work of firing shots. In the last room there were four shots to be fired. Three of the shots were fired. One shot Basil Moyer could not get to ignite on account of a damp fuse. The two shot firers left the room and the three fired shots exploded. After the three shots had exploded, Basil Moyer went back toward the room to fire the shot that had failed. When Moyer got within a short distance of the failed shot, he fell, overcome by the fumes. His companion attempted to rescue him but being himself affected by the fumes himself failed and went for help. Before help came, Moyer was so overcome that he died..

The commission made findings of fact and rulings of law as follows:

### FINDINGS OF FACTS AND RULING OF LAW.

"It is admitted that the employer was a major employer and had not rejected the act. Under section 3300, Revised Statutes 1919, the employer is conclusively presumed to have elected to accept the provisions of the act. Employee had not rejected the act.

"I find from the evidence that employee's death was the result of an accident arising out of and in the course of his employment. That employer had notice of the injury and death and dependents' claim was filed in time as prescribed by law. [Sections 3336 and 3337, Revised Statutes 1929.]

"I further find that employee's parents, Joe Moyer and Dora E. Moyer, were partially dependent for support upon his wages at the time of the injury. That he contributed all his earnings to them and therefore they are entitled to the total death benefit. [Triola v. Western Union Tel. Co., 25 S. W. (2d) 518.]

"The employer had not insured its liability under the compensation law and had not been authorized by the commission to carry its own liability. Under the provisions of section 3323, Revised Statutes 1929, the compensation awarded is commuted and payable immediately.

"28. Dated March 11, 1932.

"29. Made by

"(Signed)  CHARLES F. LUKE,

"Referee, Missouri Workmen's Compensation Commission.

"30. A true copy. Attest:

"(Seal)  "(Signed)  WM. T. FINDLY, SECY."

A review was had before the commission which resulted in affirming the award of March 11th, aforesaid.

Orek Coal Company appealed from the award to the Circuit Court of Adair County, Missouri. In the hearing, on appeal, the award made by the commission was affirmed.

From the judgment of the Circuit Court of Adair County, Missouri, affirming the award of the commission, the Orek Coal Company duly appealed.

The appeal was allowed to the Supreme Court of Missouri on claim that constitutional question was involved. The Supreme Court held that no constitutional question was raised by appellant's presentation and the cause comes to us by mandate of the Supreme Court.

Outside of a constitutional question, the appellant makes assignment of error as follows:

"I.

"Both the commission and the court erred in deciding that the claimants are dependents of Basil Moyer:

"A. There is no substantial evidence on which to base the finding.

"B. There is no substantial evidence that Basil Moyer contributed any sum to claimants' support, and therefore, there is nothing on which to base a finding that he did, or that any contributions were necessary.

"II.

"There is no evidence to sustain a finding that Basil Moyer was an employee of appellant at the time of his death, because:

"A. The evidence shows that he was an independent contractor.

"B. Because, at the time of his injury he was not engaged in any service for appellant, nor in any duty pertaining to his employment.

"C. Because he was acting in violation of the above statute; the express command of appellant; the rules of the company, the custom and practice of the business. All of these were mandatory on Moyer.

"D. Because Moyer was undertaking to do a thing which he was prohibited from doing, and which was the job of another workman engaged in an entirely different class of work.

"III,

"Basil Moyer did not die as the result of an accident, because:

"1. His injury was not the result of an unexpected or unforeseen event happening suddenly and violently.

"IV.

"Because the evidence shows that Basil Moyer expected to, and knew he would, be injured, and there is no presumption to the contrary which would overcome this positive proof."

## Opinion.

The assignments of error made by the appellant, herein, are in exact analogy with a demurrer offered at the close of all the evidence

in a cause tried by court and jury in the circuit court. As to matters of fact, we are bound by the finding of the commission, if same is based on any substantial testimony. As to matters of law, we exercise the same powers of final decision as occurs in an ordinary appeal.

As to the rulings of law of the commission, supra, we conclude that the commission's ruling to the effect the employer, appellant herein, is conclusively presumed to have elected to accept the provisions of the Workmen's Compensation Act, is correct. Further, it stands admitted that the employer had due notice of injury and death; further that the claim was filed in due time.

It further stands undisputed that the employer had not insured its liability and had not been authorized to carry its own liability. We further conclude that by virtue of the provisions of section 3323, Revised Statutes 1929, that compensation, if any due, is commuted and payable immediately.

Having found no error in the rulings of law by the commission, we proceed to consider findings of fact.

Incident to the issue of fact as to dependence, section 3319, Revised Statutes 1929, specifically provides where an employee, who leaves no dependents, the compensation is limited to medical, surgical, hospital, nursing, ambulance, medicines and burial expenses as limited by the statute.

The appellant makes statement of conclusion to the effect that there is no substantial evidence upon which to base a finding that the claimants are or were dependents upon Basil Moyer, deceased. This conclusion is followed by citation of section 3319, supra, and Holliday v. Walls et al., 64 S. W. (2d) 318, and other court cases. These citations are only conclusive of the law and we must look to the record to determine as to whether there is substantial evidence to support the finding of the commission.

Where supported by substantial evidence, the finding of the commission is conclusive on this court. [Holliday v. Walls et al.; supra.]

The father, mother and other witnesses testified that the money earned by the deceased went into the general family fund. Contributing to this fund and sharing in the fruits of same was not only the deceased but the father and a son by the name of Kenneth, who was over the age of twenty-one.

It appears that all lived together on a rented farm and the combined wages of the father, Basil and Kenneth was turned over to the mother and used by her for general purposes, incidents to general expenses for all the family and for the general overhead in running the farm; the surplus was invested in purchase of stock for the farm. It appears that a minor son, Hershel, did not work out for hire but that his duties were to do farm work.

Concerning these family earnings, Joe Moyer, the father, on cross-examination was asked and answered questions as follows:

"Q. And the money that all of you earned went into this stock? A. No—Yes, we just had one pocketbook and we lived there.

"Q. Over and above your living money went into the buying of stock and things of that sort? A. Yes."

Concerning the joint earnings, Mrs. Joe Moyer, the mother, was asked and answered questions as follows:

"Q. And with that money you paid living expenses and if there was anything left over you bought stock and used— A. And paid debts and used it for whatever we needed worst.

"Q. They had been doing that for a number of years? A. Yes, sir.

"Q. And in fact you were all in a partnership in the joint enterprise of farming and whatever activity you were pursuing? A. Yes, sir."

The evidence in the case at bar in many respects conforms to the evidence in Triola et al. v. Western Union Tel. Co., 25 S. W. (2d) 518. In the Triola case the father and two sons were the wage earners and the joint wages of the three wage earners constituted the revenue for the support of a family of ten and the total wages were $59.04 per week.

The Triola case is distinguished from the case at bar in that the wages earned by the three working members constituted the family revenue for the support of a family of ten persons. In the case at bar it is shown that the combined wages of three wage earners, the father, an adult son, and the deceased, a minor son, were used in the carrying on of a joint enterprise, to-wit: of farming or an activity being pursued by the family. Another son, as aforesaid, engaged in farm work incident to the joint enterprise of farming and stock raising.

In the Triola case, supra, the evidence is conclusive that the minor son's wages were all turned over to the parents as a contribution for family support alone and no part of same is shown as being turned over to carry out any joint enterprise wherein profit and loss entered into consideration.

We conclude that based upon evidence the wages of the deceased minor son was turned into the family fund to meet the actual family needs of the family of ten and as there was no evidence to the effect that any part of the son's wages were being used to capitalize and carry on an outside enterprise, wherein another than the dependents were engaged, the St. Louis Court of Appeals in passing upon the facts presented in the case of Triola et al. v. Western Union Tel. Co., supra, was justified in holding that compensation should be computed, under such facts, as based upon the full wage received by the minor son.

In the case at bar, however, it stands admitted that the wage earners produced above the family needs and that the surplus went into an enterprise wherein the profit, if any, would at least be shared by an adult that was in nowise dependent upon the deceased.

Based upon the above distinction, we conclude, there is no evidence in this case to justify the conclusion of the commission in basing its award upon the total wages of the deceased. Compensation, we conclude, is based upon the dependence of those who are entitled to recover and the provisions of paragraph C of section 3319, Revised Statutes 1929, cannot be distorted to permit a recovery for surplus wages of a minor that was admittedly used in the capitalization and maintenance of outside enterprises engaged in by those who are only partially dependent on the wages of a minor son and wherein one who is not a dependent is joined in the enterprise.

The evidence in the case at bar, we conclude, presents substantial evidence to support the finding of partial dependency and regardless of the fact that there may be evidence from which the conclusions presented by appellant might be possible, still, it does not come within our province to disturb a finding that is supported by substantial evidence.

While the appellant presents other claims of error under several sub-heads, still, on final analysis these other claims all group under the claim, that the evidence does not support the commission's finding, to the effect that the death was the result of an accident arising out of and in the due course of employment.

The appellant urges that Basil Moyer, deceased, was an independent contractor.

In support of above contention, section 16377, Revised Statutes 1929, is cited.

From the fact that appellant draws many inferences based upon the above statute, we set forth herein that portion bearing upon the points presented, as follows, to-wit:

"—And in all dry and dusty coal mines discharging light carbonated hydrogen gas, or in mines where the coal is blasted off of the solid, shot firers must be employed by the operator of said mine or mines, to fire all shots after the employees and other persons have retired from the mine. And all shots prepared by the miner for the extraction of coal from off of the solid must be so placed, drilled and charged that the same, when fired, shall perform safely the duty required of such shots; but if the shot firers find or discover that a drill hole is gripping too much, or that it is drilled too much into (what the miners term) "the tight," and as may in the judgment of the shot firers prove a windy, blown-out or otherwise dangerous shot, said shot firers shall there and then condemn such shot as too dangerous to fire and pass the same without firing it. It shall also be

·the duty of the shot firers to notify the mine foreman as soon as practicable, when a shot is condemned, who shall in turn attract the attention of the miner or miners responsible for the preparation of said condemned shot, and said miner or miners shall immediately after returning to work provide the necessary remedy to render the said condemned shot harmless.''

We conclude that the fact the operators are required to employ firers for the shots does not necessarily constitute such persons independent contractors.

The appellant in support of this point cites Green v. Spinning, 48 S. W. (2d) 51. The above case and other cases cited hold that an independent contractor, who exercises independent employment, renders services and represents the employer only as to results of work and not the means of doing it. However, in the same case the court lays down the rule that the main factor in determining the relationship is based upon whether or not the employer has the right of control. In other words, independent employment is employment wherein there is not a superior who has the control. The appellant in its brief makes contention of non-liability by reason that the deceased did what he did do in violation of the command of his employer.

We conclude there is evidence from which the commission could well conclude that the deceased was not an independent contractor. We further conclude the evidence justifies the inference that in firing the shots the deceased was in the service of the appellant performing a duty pertaining to his employment.

The appellant, in support of the contention that the deceased at the time of the injury was not in the performance of or about his employer's business, urges that the deceased was acting in violation of the statute, supra, against the express command of the appellant, against the rules of the company and in violation of the custom and practice of the business.

In presentation *arguendo* concerning the application of the statute to the issue, the learned counsel argues well, when considered from his interpretation of same. The appellant's counsel formulates his premises and draws his conclusions based upon the assumption a damp fuse, which presents difficulty to lighting, constitutes a shot dangerous to fire. We conclude, in view of the fact the statute in question defines explicitly the conditions constituting a dangerous shot, that the commission was justified in reaching the conclusion the shot in question was not a dangerous shot within the meaning of the law; that the deceased merely left a safe shot by reason of the fact the dampness of the fuse presented a present danger from the other shots that might explode before he could ignite the damp fuse. In other words, that he left a safe shot to be thereafter fired when the danger from the explosion of the three fired shots had passed.

We find nothing in the record of this case from which it can be concluded the statute was violated, that any rules of the company, any custom or practice would preclude a shot firer from going back and firing a safe shot that the dampness of fuse had prevented him firing in time to escape dangers from other sources, and we conclude that such act can be concluded as within line of duty.

There is ample evidence in this case to the effect that the deceased was very negligent in returning to fire the shot when he did. However, negligence is eliminated from consideration.

As to the deceased acting contrary to the express command of his employer, we conclude, the admonitions of his co-worker cannot be so construed. We further conclude there is no showing in the record from which we can conclude the deceased was duty bound to wait for the miner, who prepared the shot, to perform the duty of repairing a shot which was slow to fire by reason of dampness of fuse.

The appellant in support of positions taken cites Kincaid v. Birt, 29 S. W. (2d) 97.

The Kincaid case opinion is by the Supreme Court and the case is one for personal injuries tried before a jury in the circuit court. The case is not in point in that the issue of negligence was involved.

Cassidy v. Eternit, 32 S. W. (2d) l. c. 79, is cited. Based upon the conclusions from the evidence as drawn by the learned counsel for appellant, the Cassidy case and other cases cited would have application. However, as we conclude that there is evidence justifying the commission to make finding of facts contrary to the conclusions of counsel, we need not comment further on these authorities.

The appellant in specification three raises a question that is continually confronting the appellate courts of this State, to-wit: As to when an event is an accident within the meaning of the Workmen's Compensation law.

The courts of Nebraska, from which State our compensation law was copied, hold that an accident within the meaning of the act is evidenced by "Objective symptoms of injury." It was held that splashing of paint solution in the eye was an accident. [Johnson v. Union Stock Yards Co., 156 N. W. 511.]

The appellate court of Illinois, in giving construction of the Workmen's Compensation law of that State, held that arsenical poisoning contracted from firing a furnace was an accident within the meaning of the act. [M. & H. Zinc Co. v. Ind. Board of Ill. (1918), 284 Ill. 379, 120 N. W. 249.]

In Ohio it is held that injury arising from fumes occasioned from heating a brush saturated with paint is an accident within the meaning of the Ohio act. [Ind. Com. of Ohio v. Roth et al., 98 Ohio St. 34, 120 N. E. 172.]

In California injury from fumes arising from wood alcohol, in which

the plaintiff was accustomed to wash his hands, was held an injury caused by accident. [California Fidelity & Co. v. Ind. Accident Comm., 177 Cal. 614, 171 Pac. 429.]

In Smith v. Levis Zukoski Mer. Co., 14 S. W. 1. c. 472, the language of the opinion is as follows: An accident as defined by the compensation act is defined as follows:

"An unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

In Guillord v. K. C. Power & Light Co., 18 S. W. (2d) 97, this court held that an "event" *need not necessarily be a cause.*

As to the "event" being the result, the St. Louis Court of Appeals in the opinion in Brewer v. Ash Grove Lime & Portland Cement Co., 25 S. W. (2d) 1089, 1. c. 1087, says:

"The consensus of authority is to the effect that an injury to an employee arises 'in the course of his employment, when it occurs within the period of his employment, at a place where he might reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto.'"

Again 1. c. 1088:

"The word 'accident' . . . shall . . . be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

Again 1. c. 1089:

"If the 'event' was the 'result' in this instance the 'death' which we think is correct, then the 'objective symptom' was the visible changed condition of the body from one of life and vitality to that of death."

Based upon the facts and the law, we conclude there was substantial evidence in support of the commission's finding to the effect that the employee's death was the result of an accident arising out of and in the course of his employment.

The appellant in its specification four urges the theory of self destruction.

Suicide is never presumed. We conclude the evidence in this case justified the commission in refusing to accept such a theory.

As before stated, and based upon the reasons given, we conclude that there is no substantial evidence upon which to make an award based upon the whole of the wages that the deceased is shown to have earned.

The state of the record before us is such that we conclude there is no clear showing in the record as to what part of the deceased's wages went to the support of the dependents and what part went to

the capitalization and expenses of the farming enterprise to which his adult brother was a party.

As our conclusions uphold the commission in every other respect than as set forth above, the judgment of the Circuit Court of Adair County, Missouri, is reversed and cause remanded to the Workmen's Compensation Commission with instructions to permit the parties to present evidence on matters set forth above and to base award in accordance with showing made. All concur.