**Ernest F. SNUGGS, Claimant-Appellant,**

v.

**STEEL HAULERS, INC., Employer-Respondent.**

**No. 58257.**

Supreme Court of Missouri,
En Banc.

Nov. 12, 1973.

August V. Spallo, Kansas City, for claimant-appellant.

Edgar S. Carroll, Warrensburg, for employer-respondent.

SEILER, Judge.

We took this case on application to transfer from the court of appeals, Kansas City district, because it presents the question of whether job-connected fatigue, tension, anxiety, and stress, extended over a 27 hour period, can be considered an abnormal strain constituting an accident under the Workmen's Compensation Act. The industrial commission held it could not. The court of appeals held to the contrary, in an .opinion written by Swofford, J., and concurred in by his brothers. We decide the case as though here on original appeal, Art. V, Sec. 10, 1945 Mo. Const., V.A.M.S., agree with the conclusion reached by the court of appeals, and accordingly reverse and remand with directions. In so doing, we are indebted to Judge Swofford for his reasoned opinion, most of which, along with one or two observations of our own, we set forth below without quotes.

The appellant, employed by the respondent as a long distance truck driver based in Kansas City, was injured upon the premises of Wire Sales Company in Chicago, Illinois, a customer of respondent, on April 19, 1968, while he was in the process of delivering a load of steel products to that company. As a result of a fall, appellant sustained a fractured skull and was declared totally and permanently disabled by the compensation trial referee and was awarded appropriate compensation.

The employer (respondent here) appealed to the industrial commission, which reversed the finding of the referee, upon the basis that the employee had not sustained a

compensable accident.[1] The employee filed a petition for review in circuit court, which court affirmed the decision of the commission. This appeal followed in proper form and in due course.

The record before us discloses the following facts: On April 17, 1968, claimant, while working as an over-the-road truck driver for employer, Steel Haulers, Inc., arrived in Kansas City, Missouri, late in the evening after delivering a shipment. Upon reporting to employer's dispatch office, he was told to report back the next morning at 7:00 o'clock to take a shipment to Chicago. He arrived home around 11:00 or 11:30 p.m. and got to sleep about 12:00 or 12:00 a.m. He awoke at 5:00 o'clock the morning of April 18, 1968, and arrived back at employer's premises by 7:00 a.m. Upon his arrival, he was told to pick up a load of wire at Armco Steel in Kansas City, Missouri. He was hauling trailer No. 612 to Armco when his trailer hit a bridge abutment. He did not observe any damage to the equipment at that time. After loading the truck, he returned to employer's premises a little after 8:00 a.m. and was given delivery sheets and trip sheets by employer's dispatcher to deliver the load of steel wire to the Wire Sales Company in Chicago, Illinois. Claimant testified that he was also told at that time that the load was to be delivered by 8:00 o'clock the next morning, April 19, 1968, and that it was important the load be delivered on time because Wire Sales was unhappy about late deliveries and that if future loads were not delivered on time, Steel Haulers could lose this business.

Claimant then went to report the accident which had occurred en route to Armco to Mr. Leskera (Steel Haulers' personnel and safety director). The accident report shows that the tandem was out of alignment and a tire blown on trailer No. 612. It was decided the load had to be transferred to an undamaged trailer. Claimant then unhooked from trailer No. 612 and went to the lot where he hooked up trailer No. 615 and brought it up next to No. 612 for the load to be transferred.

Claimant contends that he stayed around Steel Haulers' premises waiting for other employees of Steel Haulers to transfer the load. He testified it was impossible to sleep there because of the noise and activity, and that he was told not to leave because he had to be present to move the trailers around and help get the load transferred. He further testified that the men who do the loading did not start transferring his load until 5:00 p.m. and that they finished around 6:00 p.m.

Claimant also stated that when he finally left the yard, he knew he could not meet the time deadline of 8:00 o'clock the next morning, but that he was going to get to Chicago as close to that time as he could, since he had been told that employer had a chance of losing Wire Sales' business and because he had been late in the past and, therefore, was apprehensive that he might be fired.

On the other hand, Mr. Terry Smith, terminal manager for Steel Haulers, testified that his records showed be billed Snuggs out for the Chicago trip at 9:30 a. m. on April 18, 1968, with trailer No. 615. Mr. Smith further stated that he would ordinarily not have billed out claimant unless he was ready to go. However, Mr. Smith stated that he had no independent recollection of the day in question. It was also employer's contention that deadlines were customarily noted on the forms given to the driver and the forms given claimant on the day in question carried no such notation. There was no other evidence which in any way conflicted with claimant's testimony as to the delay that resulted from the necessity to change the load. The commission did not base its findings upon this tes-

1. The commission agreed with the referee that appellant was totally and permanently disabled as a result of the fall.

timony and it is not material or persuasive for our review.

After claimant left his employer's lot, the tractor had to be serviced before claimant could take the equipment on the road. He went to a truck stop which he regularly used for such service in Blue Springs, Missouri, on the outskirts of Kansas City and on his direct route to Chicago. Upon his arrival there, he found two trucks ahead of him and he had to wait until 11:30 p.m. before his truck was ready to go. Before leaving the truck stop, he bought a thermos of coffee and a box of No Doz. Claimant then proceeded to drive straight through to Chicago, making only two short stops of 15 minutes each. He had nothing to eat during the trip, but drank coffee and took No Doz. Dr. Matovich, who testified on behalf of claimant, described No Doz as a stimulant with caffeine as its active ingredient.

Upon arriving in Chicago, claimant pulled into Wire Sales' lot at about 10:00 a.m. on April 19, 1968, delivered his papers to the office, and backed his truck into a dock for unloading. As he was standing by the truck, he fell, striking his head on the concrete and, as stated, fractured his skull. He stated that he does not know whether he blacked out or whether he tripped and fell. His amended claim states:

"Employee sustained an accidental injury when he fell and struck his head as the result of an abnormal and/or unusual strain brought on by his work."

There is no substantial conflict in the testimony or evidence as to the activities of the claimant from 7:00 a.m. on April 18, 1968 until his injury at about 10:00 a.m. on April 19, 1968—a period of over 27 hours.

Nor is there any substantial dispute on the issue of medical causation. There was some dispute, however, as to whether claimant had a pre-existing tendency to blackouts. This dispute was not resolved by the commission, which found that the employee did not know what caused him to fall—whether he tripped or whether he blacked out. The commission reasoned that the fall was either an idiopathic fall as in Howard v. Ford Motor Co., 363 S. W.2d 61 (Mo.App.1962) or an unexplained fall as in Wheaton v. Reiser Company, 419 S.W.2d 497 (Mo.App.1967). We see no need to pursue either possibility. Neither characterization fits the undisputed facts of this case. The facts show unusual fatigue, over-exertion, tension, and stress which extended over a considerable period of time, producing an abnormal strain. Medical experts agreed that this abnormal strain, whether or not superimposed on a pre-existing blackout tendency, caused claimant's fall.

Dr. Matovich, one of the employee's treating physicians, testified for the claimant. Assuming that the claimant had a history of fainting spells and blackouts, she gave as her medical opinion, based upon reasonable medical certainty, that the activities of the claimant during the 27 hour period preceding his fall and injury had imposed an unusual and abnormal strain upon claimant's body, had aggravated his basic problem, and had resulted in his fall.

Dr. Abrams testified for claimant. He had examined claimant in October, 1968. In response to a hypothetical question propounding all of the facts as noted in the commission's award, Dr. Abrams stated that the claimant's activities during the 27 hours preceding his fall imposed an abnormal and unusual strain upon his body. He stated that such activities invited a tremendous degree of fatigue; that sitting for long periods of time in the driver's position in the truck affects the blood circulation and causes "pools" of blood to accumulate in the legs, impedes the return of blood to the head, creating the medical possibility of fainting upon arising to an erect position. He further stated that this fatigue and blood pooling could result in such a fainting or blackout incident to a completely normal man; if the plaintiff had a prior history of such episodes, he would be more

likely to faint, and that deprivation of sleep is one of the techniques used to diagnose this type of abnormality.

Dr. Coburn, who examined appellant and testified for the employer-insurer, testified to the claimant's then physical condition, but in effect disclaimed any knowledge or opinion as to whether or not fatigue was a factor conducive to fainting or blackouts.

With reference to the claim of abnormal strain, the pertinent findings of the commission were:

"We find from the competent and substantial evidence upon the whole record that employee did not suffer an unexpected, abnormal or unusual strain constituting an accident in driving to Chicago from Kansas City on April 18 and 19, 1968.

" . . .

"We find from such evidence that if employee due to excessive long hours, over work and abnormal stress physically collapsed, such does not constitute an accident within the meaning of the Missouri Workmen's Compensation law.

"We find from such evidence that fatigue, tenseness, anxieties, stress, taking No Doz tablets, drinking too much coffee to stay awake, lack of rest, lack of sleep, and failure to eat in an attempt to meet a deadline as to time is not an unusual or abnormal strain constituting an accident."

In its findings, the commission not only accepted the proof of claimant's activities for the 27 hour period before his fall, but also the medical expert testimony offered by claimant. However, it held that such proof did not constitute "an accident within the meaning of the Missouri Workmen's Compensation law." There being no substantial conflict in either the factual or medical record before us, we decide this case as a matter of law. Merriman v. Ben Gutman Truck Service, 392 S.W.2d 292, 297 (Mo.1965).

This brings us to the basic question of law for our determination. Did the em-ployee-claimant sustain an accident under the Workmen's Compensation Act and the controlling decisions when he fell on the premises of the Wire Sales Company at Chicago, Illinois, on April 19, 1968?

Sec. 287.020, subd. 2 V.A.M.S. reads in part:

"2. The word 'accident' as used in this chapter shall . . . be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

The commission placed a too narrow construction on this statutory definition and one in direct conflict with controlling decisions of the Missouri appellate courts.

Prior to the decision of the Supreme Court in Crow v. Missouri Implement Tractor Company, 307 S.W.2d 401 (Mo. banc 1957), the courts of Missouri were not in harmony as to whether or not an unusual strain without a slip or other untoward event but resulting in injury was compensable. In Crow, this lack of harmony and seeming conflict was put to rest. The court there said, speaking through Westhues, J., 1. c. 405:

" . . . However, where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall . . . "

In Herbert v. Sharp Brothers Contracting Company, 467 S.W.2d 105 (Mo.App. 1971) the court thoroughly explored the "unusual strain doctrine". In Herbert, the employee helped push a heavy generator over a distance of 250 feet. His work as foreman did not ordinarily involve this type of exertion. Thereafter, he complained of feeling tired, went to see a doctor, and was taken to a hospital, where he died of a heart ailment. The only medical

witness, offered by the claimant, stated that in his opinion the work of pushing the heavy generator 250 feet was a contributing factor to his death. The court adopted the rule in Crow and held, 1. c. 108, that since the employee was "engaged in doing something beyond and different from his normal routine", that he had sustained an injury from an accident within the statute and that his death was compensable.

In Williams v. Anderson Air Activities, 319 S.W.2d 61 (Mo.App.1958) the court in applying the rule in Crow, stated at 1. c. 65:

" . . . The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from physical exertion rather than from sources external to the body."

In Miller v. Lever Brothers Company, 400 S.W.2d 625 (Mo.App.1966), the court stated the rule as follows, 1. c. 629:

" . . . Under the enlarged concept of accident adopted by the Supreme Court of Missouri in Crow v. Missouri Implement Tractor Co., 307 S.W.2d 401, 404, 405, ' . . . the general rule is that an abnormal strain causing injury to workman may be classified as an accident' and 'An abnormal strain may, therefore, be classified as an accident, even though not preceded or accompanied by a slip or a fall.' Such a statement by-passes any specific consideration of the statutory requirement that there must be an unexpected or unforeseen event happening suddenly and violently and, in and of itself, equates abnormal strain to an unexpected or unforeseen event . . ."

See also: Brotherton v. International Shoe Company, 360 S.W.2d 108 (Mo.App. 1962); Merriman v. Ben Gutman Truck Service, Inc., supra.

Long before the decision in Crow, the courts of this state had rejected in certain cases the doctrine that the statute by employing the word "suddenly" required that there be a showing of an outburst of effort or an instantaneous happening in order for the resulting injury to be compensable.

In the case of Rinehart v. F. M. Stamper Co., 227 Mo.App. 653, 55 S.W.2d 729 (1932), the court addressed itself to the legislative definition of "accident" under the compensation law and said, 1. c. 732:

" . . . The word accident as used in the statute is given the character of an event which is not limited to any incident or circumstance. The word event is more comprehensive in meaning, and in this connection is synonymous with the word occurrence. It includes all of the steps or connected incidents from the first cause to the final result. It is not limited in meaning to the initial cause, but may include both cause and effect . . . For an event to happen suddenly it is not required that all the incidents and circumstances of the event occur simultaneously. To constitute an accident within the definition of that word the event need not reach its consummation immediately . . ."

See also: Guillod v. Kansas City Power & Light Co., 224 Mo.App. 382, 18 S.W.2d 97 (1929); Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S.W.2d 580, 586–587 (1936).

We have concluded that the claimant sustained an accident as a matter of law under the statute and the above controlling authorities, in that he was subjected to an unusual, abnormal and continuous physical and mental strain from 7:00 a.m. on April 18, 1968 to approximately 10:00 a.m. on April 19, 1968, which directly and substantially contributed to cause his fall on the premises of Wire Sales Company at Chicago, Illinois, and his resulting total and permanent disability. This strain was endured

**486**

during the course of his employment and arose out of such employment, and the fact that it continued over a period of approximately 27 hours rather than a shorter period of time does not affect his right of recovery. To deny him compensation because of the time factor alone where the strain (as here) was shown to be continuous and the result of an uninterrupted activity in the course of employment would be to place a construction on the statute and the controlling decisions of such harsh and strict nature as to destroy the significance of the legislative intent and decisional admonition that the law be liberally construed to compensate the victims of industrial accidents.

For the reasons herein stated, the judgment of the circuit court affirming the order of the commission is hereby reversed with directions to the circuit court to set aside its judgment herein and to enter a new judgment reversing the order of the commission and to remand the case to the commission with directions to enter an award consistent with our determination that, as a matter of law, the undisputed evidence proves a compensable accident and with the previous finding of the commission that claimant is totally and permanently disabled.

Additionally, while it is not within the province of Judge Swofford's opinion to overrule a case from another district of the court of appeals, we believe we should point out that to the extent that Flippin v. First National Bank of Joplin, 372 S.W.2d 273 (Mo.App.1963) is not consistent with the view here expressed, it should no longer be followed.

Reversed and remanded with directions.

MORGAN, BARDGETT and FINCH, JJ., concur.

DONNELLY, C. J., and HOLMAN and HENLEY, JJ., dissent.