Marianne BENNETT, Appellant,

v.

COLUMBIA HEALTH CARE, Respondent,

Second Injury Fund, Respondent.

No. WD 60283.

Missouri Court of Appeals, Western District.

Aug. 6, 2002.

---

Truman Everett Allen, Columbia, for Appellant.

Thomas D. Billam, Kansas City, for Columbia Health Care.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

RONALD R. HOLLIGER, Judge.

Respondent Columbia Health Care (hereinafter "Columbia") employed Mar-

ianne Bennett (hereinafter "Bennett") as a nurse's aid for nineteen years. On May 21, 1997, she filed a Claim for Compensation, alleging an injury to her knee on November 26, 1996. On November 24, 1998, she filed an amended Claim for Compensation alleging additional accident dates of January 31, 1997, and May 13, 1997.

Prior to the date of her alleged injury, Bennett had a prior history of problems with her right knee, which also included medical treatment on several circumstances. At the hearing, Bennett testified that she had undergone surgery for a torn cartilage in 1979.[1]

Regarding the alleged injury at issue in this proceeding, Bennett testified to two incidents on November 26, 1996. First, she testified that as she was making a patient's bed, she was walking around the bed, and she felt a pop in her right knee. Later that day, she felt another pop in her right knee as she was carrying linens up a flight of stairs. Bennett worked the rest of her shift, but she called in during the night, and the charge nurse on duty told her to go to the emergency room. She did not return to work the next day. The emergency room physician's notes state that Bennett was not carrying anything when she was walking up the stairs. An incident report filed on November 27, 1996, stated that she was carrying clothing protectors at the time her knee popped on the stairs.

At the time of the incidents on November 26, 1996, Bennett believed, and remarked to her supervisor, that her knee hurt because her arthritis was acting up. As stated previously, Bennett had a history of prior problems with her knees, including the surgery on her right knee for

chondromalacia of the patella and removal of a loose body in 1979.

On January 2, 1997, Dr. William C. Allen performed a surgical debridement of Bennett's knee. She returned to work on January 29, 1997. On January 31, 1997, Bennett testified that her knee again locked up while she was pushing a wheelchair. On May 13, 1997, according to Bennett's testimony, her knee again "locked up" at work. Claimant has not worked since May 17, 1997. In January 1998, she underwent a total right knee replacement.

A hearing was held November 2, 2000, before an Administrative Law Judge in Boone County. The parties stipulated to jurisdiction, venue, coverage by the Missouri Workers' Compensation Law, rate of compensation, and Zurich's full coverage of the Missouri Workers' Compensation liability of Columbia Health Care.

The ALJ issued a decision on January 16, 2001. The ALJ noted that there was no suggestion in the evidence presented that Bennett was suffering from an occupational disease. As such, the ALJ confined his analysis to the question of whether Bennett's injury was compensable as caused by an "accident" arising out of her employment. The ALJ appears to have taken the position that Bennett did not suffer any "accident" because she had not sustained any fall, loss of balance, slip, or unusual twisting or straining immediately prior to those times when her knee "popped" or gave way. The ALJ also found that the activity in which Bennett was engaged, walking around the premises (including up and down stairs) was an activity to which she was equally exposed outside of her employment. As such, the ALJ held that her injury was not work-

---

1. She also experienced problems with her left knee in 1986, when she reported that "she felt her knee pop out of place." She underwent arthroscopic evaluation and treatment of her left knee, which noted "significant degenerative changes" in that knee.

related. He further found that Bennett "did not sustain an accident arising out of and in the course of her employment on any of the three dates in question." Although both sides had presented medical testimony offering an opinion as to relationship between the injury and the employment at the hospital, the ALJ did not discuss any of the medical testimony. Instead, the ALJ decided the case strictly on the fact that walking and going up stairs are normal activities of daily life to which the claimant was equally exposed outside of her employment, and that there was no fall, twisting, jerking or loss of balance. Bennett sought review by the Labor and Industrial Relations Commission, which affirmed the ALJ's award denying compensation. The Commission's final award essentially adopted the ALJ's award without substantial analysis or discussion. The present appeal follows.

## Issues on Appeal

Bennett raises two points on appeal from the decision of the Labor and Industrial Relations Commission. First, she contends that the Commission erred in denying her claim because the injury did not arise from any twisting, fall, jerking, or loss of balance while she was performing her job duties. She argues that by such an approach, the Commission essentially added an improper element to her workers' compensation claim. In her second point, she contends that the Commission erred in finding that she was equally exposed to the same hazards outside of work as she encountered as a result of her job duties. She argues that the Commission misapplied the law by holding that her injury was not compensable because she engaged in similar activities in her non-employment life. Further, she contends that the Commission could not have found that she was equally exposed to similar activities outside of the work milieu, as

making patients' beds, carrying linens up stairs, and pushing wheelchairs are not normal activities she engaged in outside of work, but instead were activities inherently and exclusively related to her employment.

## Standard of Review

■ In general, we may modify, reverse, remand for rehearing, or set aside the Commission's award in a workers' compensation proceeding only when the Commission's actions are unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence on the record as a whole. *Willeford v. Lester E. Cox Med. Ctr.*, 3 S.W.3d 872, 874 (Mo.App.1999). Here, a central question is whether Bennett's injuries arose out of the course of her employment. To resolve that question, the Commission needed to assess four factors: (1) whether her employment was a substantial factor in causing her injuries; (2) whether the injuries were a natural incident of the work in question; (3) whether her employment activities were a proximate cause of the injuries; and (4) whether the injuries arose from a hazard or risk unrelated to her employment to which she was equally exposed outside of her employment. § 287.020 RSMo.

■ The standard employed by this court in reviewing the Commission's findings regarding these four factors hinges upon whether the underlying facts are disputed. Where the facts are disputed, at least one reported case has held that "causation and work-relatedness are questions of fact." *Cahall v. Cahall*, 963 S.W.2d 368, 372 (Mo.App.1998). Generally, our review of the Commission's findings of fact is very narrow. Indeed, those findings are conclusive, absent fraud, provided the findings

are supported by competent and substantial evidence. *Moriarty v. City of Kirksville*, 975 S.W.2d 215, 219 (Mo.App.1998) (citing § 288.210, RSMo). Conversely, when the pertinent facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review. *See, e.g., Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996); *Cherry v. Powdered Coatings*, 897 S.W.2d 664, 666 (Mo.App.1995); *Davis v. McDonnell Douglas*, 868 S.W.2d 170, 171 (Mo. App.1994). As there appears to be no material factual dispute as to the nature of Bennett's duties or the circumstances immediately attending her injury, we apply the standard of review employed in *Cox v. Tyson Foods, Inc.*, and employ a *de novo* standard of review to the issue of whether Bennett's injuries arose out of her employment with Columbia Healthcare.

■ Appellate review of an workers compensation award is a two-step process. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 565 (Mo.App.1995). First, we must determine whether the award is supported by substantial competent evidence. *See id.* In determining whether an award is supported by substantial competent evidence, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995). If we find that the award was supported by such evidence, we then examine whether the award is nevertheless against the overwhelming weight of the evidence. *See id.* at 565. In determining whether the award is against the weight of the evidence, we undertake an independent review of the whole record. *See id.* at 564.

### Was There a Compensable "Accident"?

■ As indicated above, Bennett's first point on appeal alleges that the Commis-

sion, in adopting the ALJ's award, imposed an improper element upon Bennett's claim. Specifically, she suggests that the Commission took the position that for her injury to be compensable, it had to be the result of some event such as a slip, fall, or unusual strain or twisting of her knee. Respondent Columbia contends that the Commission properly took the view that proof of some injury-causing "event," in addition to the resulting injury itself, is necessary to establish a compensable claim. Respondent Second Injury Fund, without substantial analysis or discussion, suggests that the Commission did not impose such a requirement, despite language in the ALJ's award stating that Bennett had not slipped, tripped, or placed unusual strain on her knee.

This issue turns upon the interpretation of the term "accident" in the workers' compensation statutes, which is defined in § 287.020.2, RSMo. Prior to *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983), the legal concept of "accident" was generally restricted to sudden traumatic events. *Wolfgeher* broadened the definition of "accident," shifting the focus to whether a work-related injury had occurred and away from whether the employee had been exposed to some sudden, unexpected trauma that precipitated the injury. *Smith v. Climate Eng'g*, 939 S.W.2d 429, 434 (Mo.App.1996). The legislature, in 1993, amended portions of the workers' compensation statutes, including the definition of accident in § 287.020.2, RSMo. Later cases have treated those amendments as codifying the principles in *Wolfgeher. Id.* at 436. In *Smith v. Climate Engineering*, the Eastern District opined that the emphasis had shifted away from a requirement that the claimant had suffered from a sudden "accident," to an examination of "the injury itself and whether it arose out of and in the course of

the employment." *Id.* As such, "although not immediately preceded or accompanied by an unforeseen and unusual event, an injury is compensable when it is an unexpected result of the performance of the usual and customary duties of an employee which leads to physical breakdown or a change in pathology." *Id.* (citing *Wolfgeher* and § 287.020.3, RSMo).

The rationales underlying *Smith* were quickly mirrored by this court in *Winsor v. Lee Johnson Construction Co.*, 950 S.W.2d 504, 509 (Mo.App.1997). We held in *Winsor* that a claimant need not necessarily show that her injury resulted from the occurrence of an unusual event. Instead, "[a]n employee is only required to show that his injury is 'job related.'" We went on to state that "[t]he injury need not result from any unusual or abnormal event. Rather, it is sufficient to show only that the performance of usual and customary duties led to a breakdown or a change in pathology. The worsening of a preexisting condition is a 'change in pathology.'" *Id.* (citations omitted).

While the opinion of the ALJ, essentially adopted by the Commission, appears to acknowledge the current interpretation of "accident" post-*Wolfgeher*, the ALJ then undertook a review to determine whether Bennett had suffered a traumatic event, by looking only to the circumstances immediately preceding the times in which Bennett's knee "popped."[2] We agree with Bennett that it appears, by the nature of the ALJ's findings and its discussion of prior cases, that the ALJ took the position that, to be compensable, Bennett's injury had to be immediately preceded by either a sudden fall (precipitated by slipping or tripping) or by some unusual strain upon her knee caused by bending, twisting, or kneeling. This was an erroneous application of the law under *Wolfgeher* and the 1993 amendments to the workers' compensation statutes. By adopting the ALJ's opinion, the Commission compounded that error.

## Did Bennett's Injury Arise Out of Her Employment?

Despite the Commission's error in applying the law concerning what constitutes a compensable accident, we must, nevertheless, uphold its award if it correctly concluded that Bennett's injury did not arise out of her employment with Columbia. At the hearing, Bennett bore the burden of establishing all four elements of this issue. As stated previously, those elements are: (1) that employment was a substantial factor in causing the injury; (2) that the injury resulted as a "natural incident of the work"; (3) employment was a proximate cause of the injury; and (4) the injury was not the result of a hazard or risk unrelated to employment to which the claimant was equally exposed to in her normal non-employment life.

This brings us to Bennett's second point on appeal, which contends that the Commission erred in finding that she was equally exposed to the same hazards and risks outside of her employment. The relevant passage of the award states:

2. It is unclear from the evidence presented whether this "popping" was an injury causing event or merely a symptom of that injury. Indeed, there may be some distinction between the onset of symptoms of an injury and the underlying injury itself. This is especially significant in situations where an injury is gradual and progressive in nature. Examining the types of activities an employee was engaged in at the time an injury became symptomatic is likely to be instructive. It may not, however, reveal whether the injury was itself caused by activities related to employment. In any event, as none of the parties raise this underlying distinction, we need not explore it here.

[T]he hazard or risk (if any) that caused or precipitated the "pop" or "giving away" on each occasion was the mere act of "walking" or "walking up steps". I do not find that this was a hazard or risk related to the employment, but merely a normal activity to which Claimant was equally "exposed" outside of and unrelated to her employment in normal non-employment life.

Bennett argues that the ALJ's opinion incorrectly concluded that walking could not be a hazard arising out of her employment.

■ Bennett bore the burden of establishing that the hazard or risk that led to her injury was not one that she was equally exposed to outside of her employment. Bennett suggests that this test is not applicable when the activity causing the injury is required as part of the employee's duties, but points us to no case which stands for that proposition. While she also states in her brief that "the amount of walking required by claimant's job exceeds the amount of walking in her non-employment life," and even discusses DOT classifications rating nursing aid work as medium-duty, she provides no citation to the record on appeal in support of these claims. Instead, she relies upon a series of cases in which employees were compensated for injuries suffered while walking, specifically, *DeLong v. Shop 'N Save*, 972 S.W.2d 495 (Mo.App.1998); *Wells v. Brown*, 33 S.W.3d 190 (Mo. banc 2000); *Willeford v. Lester E. Cox Med. Ctr.*, 3 S.W.3d 872 (Mo.App.1999); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. Trans World Airlines*, 984 S.W.2d 512 (Mo. banc 1999).

In *Wells, Willeford,* and *Kasl,* the hazards faced by the employees in question were more than just the act of walking, however. In *Wells* and *Willeford,* the employees faced icy conditions that made footing treacherous. In *Kasl,* the employ-ee's foot fell asleep as a consequence of being required to sit and wait for an extended period of time. The respective claimants faced these hazards, *in addition to* the risks inherent to the activity of walking. The claimants were also required to face those hazards as a result of their employment. Implicit in that observation would seem to be a view that the claimants could have avoided those additional hazards outside of their respective employments. For that reason, each respective court concluded that the claimants' injuries resulted from dangers to which the employee was not equally exposed in their non-employment activities.

The case of *Drewes v. Trans World Airlines* is more difficult to resolve. In *Drewes,* the claimant was carrying her lunch through a break room, when she fell and injured her ankle. *Drewes,* 984 S.W.2d at 514. The opinion does not note any particular hazard faced by the employee. The primary issues on appeal were whether the accident arose out of the claimant's employment and whether it occurred in the course of her employment. *See id.* at 514–15. In evaluating the former issue, the Supreme Court looked to the four factors in § 287.020.3, RSMo, holding:

First, Drewes' act of carrying her lunch to the table to eat her meal was a "substantial factor" in causing her injury. Second, the Commission found no evidence of an idiopathic condition "innate or peculiar" to Drewes. Nor was there any evidence that the injury came from a hazard or risk that was "unrelated to" Drewes eating lunch. *Necessarily, Drewes was not "equally exposed" outside of her employment to the risk of falling during her lunch break.*

*Id.* at 514. Judge Covington dissented from the majority opinion in *Drewes,* arguing that the claimant "was no more likely

to fall in the break room during her lunch break than in her 'normal non-employment life.'" *Id.* at 516.

Each of these cases is factually distinguishable from the present matter, as each of them involved a fall, whereas Bennett did not. We disagree with the Commission's conclusion, however, that this distinction is dispositive as to the underlying issue. That issue is the application of the requirement in § 287.020.3, RSMo, that an injury arise from a hazard that the employee is not equally exposed to in his or her non-employment activities.

In his treatise, Arthur Larson identified five historical positions with regard to determining whether a risk or hazard causing injury to a claimant arose out of the claimant's employment. These positions may be summarized as follows:

(1) *Peculiar Risk*—The risk must be particular to the claimant's occupation. If the risk is shared by the general public, then the resulting injury is not compensable.

(2) *Increased Risk*—If the particulars of the claimant's employment led to an increase in the risk or hazard which resulted in the injury, then it is compensable, even if the risk or hazard is shared by others outside of employment. This, Larson notes, is the majority rule.

(3) *Actual Risk*—It is not relevant whether the hazard or risk is shared by the general public. Instead, the sole question is whether the risk was a risk inherent in the specific type of employment. As Larson notes, "there is no real statutory basis for insisting upon a particular or increased risk, as long as the employment subjected claimant to the actual risk that caused the injury."

(4) *Positional Risk*—An injury is compensable if would not have occurred if the claimant had not been subjected to the risk of injury due to his employment. Essentially, this is a "but for" test. Larson notes this as the emerging trend in recent cases.

(5) *Proximate Cause*—An injury is compensable if the harm was foreseeable as a hazard of the kind of employment and if no independent, intermediate cause breaks the chain of causation.

*See* 1 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW, §§ 3.02–3.05 (2002). Prior to *Drewes*, the reported cases appeared to fall within the "increased risk" analysis, the majority rule according to Larson. The language of § 287.020.3(2)(d), RSMo, also appears to fit within that category.[3] *Drewes* may signify a shift away from that position towards either an "actual risk" or a "positional risk" analysis, however. It appears that the injury Drewes suffered was found to be compensable merely because it occurred while she was engaged in activities incidental to employment. *Drewes*, however, provides scant analysis of the issue, so we cannot say, for certain, whether the Supreme Court has indeed adopted either of these latter approaches for determining whether an employee's injury arises out of his or her employment.

In light of *Drewes*, however, we conclude that the Commission erred in concluding that an injury caused or aggravated by walking could not be considered as "arising out of" Bennett's employment. Clearly, walking, both on level floors and traversing stairs, was an integral part of Bennett's job activities. She was engaged in activities incidental to her duties at the time she experienced each "pop" or "giving way" of her knee.

---

**3.** Other subsections of the statute, however, appear to correspond to the "actual risk" or "proximate cause" analyses outlined by Larson.

**532**

Because the ALJ and the commission did not consider or address all the pertinent issues prescribed by § 287.020, including substantial factor and proximate cause, the case must be remanded. There remain serious questions as to whether Bennett's work duties were a substantial factor in causing her injury or whether it was merely the natural progression of the pre-existing degeneration of her knees. Clearly, Bennett had had problems in the past with her knees. She had received medical treatment for those problems on at least two prior occasions. This poses a question of fact. Although there was medical testimony on both sides of this issue, the issue was not addressed by the ALJ or the Commission.

Clearly, "[a]n injury is not compensable merely because work was a triggering or precipitating factor." § 287.020.2, RSMo. Instead, for an injury to be compensable, the Commission must find that work was a substantial factor in causing the injury. *See id.; see also Cahall v. Cahall,* 963 S.W.2d 368, 372 (Mo.App.1998). Given the factual nature of this inquiry, and the lack of findings made by the ALJ and the Commission, we are unable to resolve this question on appeal. Instead, we must remand the cause to the Commission for further proceedings with regard to this issue.

Therefore, the award of the Labor and Industrial Relations Commission is hereby reversed, and the matter remanded to the Commission for further proceedings consistent with this opinion.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.