Alok Ahuja, Chief Judge,
concurring in part and dissenting in part
I concur in affirmance of the Labor and Industrial-Commission’s award of compensation to Milton Young for his knee injury. I respectfully dissent, however, from the majority’s affirmance of the separate award for an injury to Young’s right shoulder.
The Commission found that Young sustained the shoulder injury while engaged in the routine task of lifting himself up onto a platform on his work truck. Young had performed this same task innumerable times without incident. Because Young’s shoulder injury was apparently caused by his performance of his usual work duties in the normal manner, it does not appear that Young’s shoulder injury was caused by an *799 “unusual strain” as required by the definition of an “accident” found in § 287.020.2.[1] That injury would accordingly not be com-pensable.
The “unusual strain” requirement was added to the definition of an “accident” by the 2005 amendments to the Workers’ Compensation Law. At the time of the 2005 amendments, the term “unusual strain” had been given a well-understood meaning in Missouri workers’ compensation caselaw for more than 60 years, and that interpretation was still being applied with respect to particular classes of injuries. Under the well-establishing meaning of the term, an “unusual strain” would only be found where a worker was injured while performing a task outside his or her normal job responsibilities, or while performing a normal task in a non-routine way. The legislative intent behind the addition of the “unusual strain” requirement to the definition of “accident” in 2005 is obvious: to restore the understanding of the term “accident” which had prevailed for 40 years prior to a 1983 Missouri Supreme Court decision. We cannot ignore the copious and undeniable evidence of the legislature’s intent, whatever our views as to the wisdom of the legislature’s policy choices.
Because Young’s shoulder injury does not appear to have been caused by an “unusual strain,” I would reverse the Commission’s award of compensation for that injury, and remand to the Commission to reconsider the compensability of Young’s shoulder injury under a proper understanding of the term “accident.”
Discussion
The Workers’ Compensation Law provides that:
The word “accident” as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.
§ 287.020.2. The Act makes clear that the “accident” — meaning, the “unexpected traumatic event” or “unusual strain”— must cause the claimant’s compensable injury, and the resulting disability. Thus, § 287.020.3(1) states:
An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. “The prevailing factor” is . defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.
(Emphasis added.) Similarly, § 287.020.3(2)(a) provides that “[a]n injury shall be deemed to arise out of and in the course of the employment only if ... [i]t is reasonably apparent, upon consideration of the circumstances, that the accident is the prevailing factor in causing the injury .... ” (Emphasis added.)[2] .
*800 Thus, to establish a right to worker’s compensation, a claimant must establish that an “unexpected traumatic event” or “unusual strain” caused his injury. The majority opinion does not contend that Young experienced “an unexpected traumatic event.”[3] For reasons explained below, it cannot be said that Young’s shoulder injury resulted from an “unusual strain,” either.
According to the dictionary, “strain” means “excessive or difficult exertion or labor,” “a violent or overtaxing effort.” Webster’s Third New International Dictionary at 2255 (1993 unabridged ed.). “Unusual” is defined as “being out of the ordinary,” “deviating from the normal,” or “being unlike others.” Id. at 2514. “Unusual” is a relative term, however, and the dictionary definition leaves open a critical question: “unusual” in relation to what?
This question has been asked before, and answered in various ways. Workers’ compensation statutes across the country contain provisions, like § 287.020.2, which specify that compensable injuries must result from “unusual” exertion or circumstances. As a leading treatise explains, courts have interpreted the term “unusual” ■in these statutes in three different ways:
To summarize: there can thus be identified three answers to the question: “unusual compared with what?” These are:
(1) Unusual compared with this employee’s normal strains.
(2) Unusual compared with the strains of employment life generally,
(3) Unusual compared with the wear and tear of everyday nonemployment life.
Arthur Larson & Lex K Larson, Larson’s Workers’ Compensation Law § 44.05[4][d], at 4451 (2014).
Although the majority opinion does not explicitly state how it interprets the word “unusual” in § 287.020.2, it appears that the majority adopts the third alternative suggested by the treatise-writer: namely, that a strain is “unusual” if it exceeds the level of exertion or physical demand experienced in normal non-employment life. Thus, the majority opinion takes pains to compare the lift required to climb onto Young’s truck to the rise of a normal stair, and the height of an ordinary desk. Maj. Op. at 793-94. Similarly, the majority opinion states that, although Young experienced the strain of lifting himself up onto his truck “repeatedly],” that strain was nonetheless “unusual.” Id. at 794, 796. The majority offers absolutely no justification for adopting the third alternative meaning of the word “unusual,” when other interpretations are equally available, and equally reasonable.[4]
*801 Contrary to the majority, I conclude that the phrase “unusual strain” in § 287.020.2 must be interpreted consistently with the first option identified by the treatise; namely, a strain will be considered “unusual” only when it exceeds the normal physical demands of the claimant’s job. There are two considerations which require this result: (1) this is the way in which Missouri workers’ compensation caselaw has consistently interpreted the concept of an “unusual strain” (as part of the definition of an “accident”) since at least 1941; and (2) this is the way in which the concept of an “unusual strain” continues to be applied with respect to particular types of injuries under the Workers’ Compensation Law. Under well-established principles of statutory construction, we are required to interpret the phrase “unusual strain” consistently with the way in which it has previously been interpreted by Missouri courts, and consistently with the way the same term is understood in other contexts under the Workers’ Compensation Law.
I.
The term “unusual strain” has a well-developed, established meaning in the caselaw applying Missouri’s Workers’ Compensation Law. Under long-standing principles of statutory construction, we are required to read the term “unusual strain” consistently with this prior judicial construction: “ ‘When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action.’ ” Balloons over the Rainbow, Inc. v. Dir. of Revenue, 427 S.W.3d 815, 825-26 (Mo. banc 2014) (quoting Cook Tractor Co. v. Dir. of Revenue, 187 S.W.3d 870, 873 (Mo. bane 2006)); see also, e.g., Est. of Nelson v. Mo. Dep’t of Social Servs., 363 S.W.3d 423, 426 n.5 (Mo.App.W.D.2012). Resort to the accepted legal definition of “unusual strain” is also required by § 1.090, which specifies that “technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import.”[5]
When first enacted, the Workers’ Compensation Law defined “accident” as “an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.” § 3305(b), RSMo 1929. The earliest cases interpreted the statutory definition liberally, requiring only that the injury itself be “unexpected or unforeseen.” See, e.g., Caw v. Murch Bros. Constr. Co., 223 Mo. App. 788, 21 S.W.2d 897, 899 (1929).
This liberal construction was rejected by the Missouri Supreme Court in State ex *802 rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40 (1941). In Huss-man, the claimant suffered a heart attack while carrying a bucket of water in the performance of his usual duties. Id. at 41. The Supreme Court held that the claimant had not suffered an injury “by accident,” and was therefore not entitled to compensation. The Court likened the Hussman case to its earlier decision in DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834 (1933), which denied compensation for death caused when an aneurysm ruptured while the claimant was sawing a piece of lumber. The Court explained:
The facts in the DeLille case, supra, are very similar to those in the instant case. In both, the injury and death were caused, or hastened, by an increased flow of blood through diseased blood vessels; such increased flow being due to necessary and customary physical exertion incident to the normal duties of the workman. In neither case was there any unusual occurrence, such as a slip, or fall, or abnormal strain.
Id. at 42 (emphasis added).
Following Hussman, Missouri decisions repeatedly held that, in order to be com-pensable, a claimant’s injury must arise from an “unusual or abnormal strain,” meaning physical demands beyond those which were normal for the claimant’s particular employment. As the Court explained in Schoessel v. Standard Automotive Components, 539 S.W.2d 708 (Mo.App.1976),
it has become clear that an employee must at least prove he suffered unusual and abnormal strain 'before he can receive compensation for an “accident.” A long line of cases attests to this fact.-... Injuries produced by strains which are normal for the job to be performed in a customary fashion are not compensable although the amount of straining may be great or would be considered abnormal in other classes of employment.
Id. at 709-10 (citations and internal quotation marks omitted).
Russell v. Southwest Grease & Oil Co., 509 S.W.2d 776 (Mo.App.1974),[6] similarly recognized that this “unusual strain” rule had become an established component of Missouri’s workers’ compensation jurisprudence. Russell affirmed the Commission’s denial of compensation for a worker who died of a heart attack while unloading barrels from a truck, because there was no evidence of an “unusual strain.”
[T]he work being done by [the worker] on the afternoon of his death was simply his usual, ordinary routine type of work. The barrels were no bigger or different than those which he had been delivering for the past 5 or 6 years. The unloading by him from the truck by the hydraúlic lift was no different than what he had previously done.' Still further, there is no showing whatsoevér of any slip, fall or other similar untoward event.
Id. at 781.
Russell rejected the claimants’ argument that an “unusual strain” should not be required:
As an alternative proposition, claimants argue that the Commission erred in *803 following the rule that in order for a heart attack to be compensable, the attack must have resulted from an unusual strain not customarily exerted by the employee in his normal work. Claimants rely heavily upon the writings of Professor Larson, and they cite cases from other jurisdictions representing what is said to be the majority rule permitting recovery of compensation even in situations where the employee has not been subjected to unusual strain.
The same arguments and the same authorities were presented to this court and were by this court rejected in Herbert v. Sharp Brothers Contracting Co., 467 S.W.2d 105 (Mo.App.1971), on the basis of authoritative Missouri Supreme Court decisions to the contrary. Since the decision in Herbert, the Missouri Supreme Court in Snuggs v. Steel Haulers, Inc., 501 S.W.2d 481, l.c. 485 (Mo. banc 1978) has reiterated the Missouri rule which requires unusual strain for the showing of an accident. Therefore, now with even more reason than was true when Herbert was decided, this court must adhere to the unusual strain rule.
Id. at 782.[7]
Missouri courts applied this “unusual strain” doctrine in dozens upon dozens of cases. Thus, some cases reversed Commission awards of compensation because of the lack of an “unusual and abnormal strain,”[8] others affirmed the Commission’s denial of compensation on this basis,[9] while still other cases held that a claimant was entitled to compensation because he or she *804 had presented sufficient evidence of an “unusual or abnormal strain” causing their injuries.[10] The cases cited in the preceding footnotes are only a small sampling of the Missouri appellate decisions which applied the concept of an “unusual or abnormal strain” in determining the compensa-bility of workplace injuries.
The Missouri Supreme Court abandoned the “unusual strain” requirement in Wolfgeher v. Wagner Cartage Sei~vice, Inc., 646 S.W.2d 781 (Mo. banc 1983). Wolfgeher recognized that the “unusual strain” doctrine, which had developed following Huss-man, required that a worker be injured doing something other than his or her routine work in the normal way:
The unexpected or abnormal strain usually results from the performance of work in an abnormal manner or in a *805 manner not routine, but this is not necessarily so. Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration.
Id. at 783 (citations omitted). Wolfgeher abandoned the “unusual strain” requirement, reasoning that it was inconsistent with the liberal construction to be applied to the Worker’s Compensation Law, and with the underlying purpose of the Act to place the cost of workplace injuries on employers; “prevent[ed] compensation for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards”; was inconsistent with the statutory treatment of occupational disease claims; and was inconsistent with the interpretation applied by the vast majority of other States. Id. at 785.
Later decisions recognize that Wolfgeher had the effect of eliminating the “unusual strain” requirement from Missouri worker’s compensation jurisprudence. Thus, in Wynn v. Navajo Freight Lines, Inc., 654 S.W.2d 87 (Mo. banc 1983), the Supreme Court observed that Wolfgeher “eras[ed] the abnormal or unusual strain requirement,” and “teaches that the right to compensation is not lost simply because the strains described are not unusual.” Id. at 89.[11] The most recent case recognizing Wolfgeher’s abandonment of the “unusual strain” concept was Bennett v. Columbia Health Care, 80 S.W.3d 524 (Mo.App.W.D.2002). After discussing the history of the interpretation of the term “accident” in Missouri’s Worker’s Compensation Law, Bennett explained that in the case before it, the administrative law judge “took the position that, to be compensable, Bennett’s injury had to be immediately preceded by either a sudden fall ... or by some unusual strain upon her knee.” Id. at 529. The Court held that “[tjhis was an erroneous application of the law under Wolfgeher.” Id.
While it may be that Wolfgeher “eras[ed] the abnormal or unusual strain requirement” in 1983,[12] the General Assembly resurrected that requirement in 2005, and restored the pr e-Wolfgeher understanding of the term “accident.” Any contrary interpretation of § 287.020.2 is inconsistent with this obvious legislative intent.
II.
Besides the pr e-Wolfgeher caselaw applying the “unusual strain” requirement, a second compelling reason exists to interpret the phrase “unusual strain” to require some exertion beyond the ordinary physical demands of the claimant’s employment: despite Wolfgeher, the “unusual strain” concept continued to be applied in 2005 under other provisions of the Worker’s Compensation Law, and the interpretation of the concept in connection with those other statutory provisions was consistent with the pr e-Wolfgeher decisions.
*806 “ ‘[W]hen the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are in pari materia and should be construed to achieve a harmonious interpretation of the statutes.’ ” Williams v. State, 386 S.W.3d 750, 754 (Mo. banc 2012) (quoting State v. Knapp, 843 S.W.2d 345, 347 (Mo. banc 1992)).
The phrase “unusual strain,” which was added to the definition of an “accident” in 2005, has appeared in § 287.195 since 1957. Section 287.195, which addresses the com-pensability of work-related hernias, provides:
In all claims for compensation for hernia resulting from injury arising out of and in the course of the employment, it must be definitely proved to the satisfaction of the division or the commission:
(1) That there was an accident or unusual strain resulting in hernia;
(2) That the hernia did not exist prior to the accident or unusual strain resulting in the injury for which compensation is claimed.
(Emphasis added.)
The term “unusual strain,” as used in § 287.195, has been interpreted.consistently with the pre-Wolfgeher caselaw. Thus, in McClain v. Yellow Cab Co., 439 S.W.2d 200 (Mo.App.1969), the Court explained that
Performance of any manual task is accompanied by a certain degree of straining the muscles and other parts of a workman’s body. The amount of strain incurred will, of course, vary according to the work to be accomplished and the circumstances and conditions under which it is being performed. Injuries produced by strains which are normal for the job to be performed in a customary fashion are not compensable although the amount of straining may be great or would be considered abnormal in other classes of employment or if performed in an abnormal manner under unusual circumstances. On the other hand, if an employee suffers an unexpected and abnormal strain (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly natural causes, the injury is (the result of) an accident.
Id. at 203 (citations and internal quotation marks omitted); see also Pattengill v. General Motors Corp., 845 S.W.2d 630, 631 (Mo.App.E.D.1992).[13] McClain reversed *807 the Commission’s award of compensation to a taxicab driver who suffered a hernia as a result of loading a customer’s luggage into his cab, because of a lack of evidence that the driver was exerting himself in a manner that was “unusual or abnormal to that customarily experienced in the discharge of his usual duties.” 439 S.W.2d at 205.
A similar reading has been applied to § 287.120.8, which states that “[m]ental injury resulting from work related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual.” Under § 287.120.8, “disabilities arising from work related stress are subject to the ‘unusual strain’ doctrine.” George v. City of St. Louis, 162 S.W.3d 26, 30 (Mo.App.E.D.2005). And here too, an “unusual strain” requires that the worker experience stress which is out of the ordinary for the worker’s particular employment: “ ‘[T]he proper comparison for purposes of Section 287.120.8 ... is to compare Employee’s work-related stress with the stress encountered by employees having similar positions, regardless of employer, with a focus on evidence of the stress encountered by similarly situated employees for the same employer.’ ” Schaffer v. Litton Interconnect Tech., 274 S.W.3d 597, 602-03 (Mo.App.S.D.2009) (footnote omitted; quoting Williams v. DePaul Health Ctr., 996 S.W.2d 619, 628 (Mo.App.E.D.1999)); see also Carnal v. Pride Cleaners, 138 S.W.3d 155, 158-59 (Mo.App.W.D.2004); Sherman v. First Fin. Planners, Inc., 41 S.W.3d 633, 637 (Mo.App.E.D.2001).
Thus, at the time the legislature modified the definition of an “accident” in 2005, an “unusual strain” requirement was being applied in two other contexts in the Worker’s Compensation Law. In each of those contexts, the phrase was interpreted to require' that an employee experience stresses or demands outside those which were typical in the employee’s particular occupation.
In interpreting a statute, we presume that the General Assembly enacts new legislation -with knowledge of .existing law, and with knowledge of the interpretation which appellate courts have placed on existing statutes. See, e.g., E & B Granite, Inc. v. Dir. of Revenue, 331 S.W.3d 314, 317 (Mo. banc 2011); Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 667 (Mo. banc 2010). Here, the “unusual strain” concept has been employed in two other contexts within the Worker’s Compensation Law, and has been interpreted identically in both contexts. We must presume that the 2005 General Assembly intended to adopt this uniform interpretation of the “unusual strain” requirement.
IIÍ.
Reliance on the pre-2005 caselaw discussed above is not precluded by § 287.020.10, which provides:
In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of “accident”, “occupational disease”, “arising out of’, and “in the course of the employment” to include, but not be limited to, holdings in: Bennett v v. Columbia Health Care and Rehabilitation, 80 S.W.3d 524 (Mo.App. W.D.2002); Kasl v. Bristol Care, Inc., 984 S.W.2d 852 (Mo. banc 1999); and *808 Drewes v. TWA, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.
(emphasis added).
Section 287.020.10 did not erase history, and does not prevent our reliance on the caselaw applying the “unusual strain” requirement. First, § 287.020.10 plainly does not apply to the interpretation of an “unusual strain” in connection with hernia injuries under § 287.195, or in connection with stress-related psychological injuries under § 287.120.8.
Second, I find it hard to believe that in 2005 the legislature felt it necessary to “reject and abrogate” pre-Wolfgeher case-law interpreting the term “accident,” when that caselaw had already been overruled by the Missouri Supreme Court more than twenty years, earlier. The more plausible reading of § 287.020.10 is that it had the effect of restoring the pre-Wolfgeher understanding of an “accident”: Bennett described and applied Wolfgeher’s rejection of the “unusual strain” requirement, and § 287.020.10 specifically lists Bennett as a case the General Assembly “rejected and abrogated.”
Third, and most importantly, the 2005 legislature for the first time added an explicit “unusual strain” requirement into the “accident” definition. As explained in §§ I and II, above, the “unusual strain” concept was well understood in 60 years of Missouri caselaw at the time of the 2005 amendments, and was being employed in connection with other provisions of the Worker’s Compensation Law which were unchanged by the 2005 amendments. The legislature’s specific incorporation of an “unusual strain” requirement into the definition of an “accident” must take precedence over the general edict of § 287.020.10 that prior caselaw is abrogated. See, e.g., Turner, 318 S.W.3d at 668 (“The doctrine of in pari materia recognizes that statutes relating to the same subject matter should be read together, but where one statute deals with the subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute.”).
IV.
Wolfgeher offered cogent policy reasons for abandoning the “unusual strain” requirement: that requirement is inconsistent with the law in a majority of the States; it treats injuries by “accident” and by “occupational disease” differently; and it is inconsistent with the general purpose of the Workers’ Compensation Law to impose the cost of workplace injuries on employers. To this I would add that, if the “unusual strain” requirement is interpreted as I believe it must be, it may limit compensation in occupations in which workers are subject to the most strenuous physical demands, and face the highest risk of injury. In those physically demanding occupations, a certain incidence of workplace injuries may be an inevitable aspect of the work, even when that work is performed in the customary and routine manner. A compelling argument could be made that these are precisely the sorts of injuries which should be compensable: employers should bear the cost of accidents which are an inherent by-product of employees’ customary work. Yet the 2005 legislature adopted precisely the opposite approach.
While there may be strong public policy reasons for a broad definition of covered “accidents,” I am not aware of any legal principle which prevented the General Assembly from adopting a more narrow compensation standard. And that is what it did by amending the “accident” definition in 2005 to impose an “unusual strain” re *809 quirement. Whether I consider that decision to be good or bad public policy is irrelevant; we must apply the statute as written. “Courts determine questions of power, not policy.” Bader Realty & Inv. Co. v. St. Louis Housing Auth., 358 Mo. 747, 217 S.W.2d 489, 493 (1949); see also, e.g., State ex rel. Reset v. Rush, 562 S.W.2d 365, 369 (Mo. banc 1978); State ex rel. KCP & L Greater Mo. Operations v. Cook, 353 S.W.3d 14, 27 (Mo.App.W.D.2011) (en banc) (citing State v. Rowe, 63 S.W.3d 647, 649-50 (Mo. banc 2002)). And, although resurrection of the “unusual strain” requirement may be anachronistic, it can hardly be considered absurd or irrational. This was, after all,- the legal standard which governed the compensability of all accidental workplace injuries from the time of the Hussman decision in 1941, through the overruling of that case in Wolfgeher in 1983.
Conclusion
When it added the “unusual strain” requirement to the definition of an “accident” in 2005, the General Assembly acted against the backdrop of 60 years of workers’ compensation caselaw which interpreted the- phrase. Under the well-establishing meaning of the term, an “unusual strain” would only be found where a worker was injured while performing a task outside his or her normal job responsibilities, or while performing a normal task in a non-routine way. The legislature evidently intended to apply this “unusual strain” doctrine to all injuries, not just to particular classes of injuries, and thereby restore the definition of an “accident” which had prevailed for more than 40 years prior to the Supreme Court’s decision in Wolfgeher.
The majority’s reading of the post-2005 “accident” definition ignores the obvious evidence of legislative intent concerning the “unusual strain” requirement. Under a correct understanding of the “unusual strain” requirement, Young’s shoulder injury would not be compensable. I therefore dissent in part, and would reverse the Commission’s award related to Young’s right shoulder injury. Because this is an issue of first impression, and because-Young may not have anticipated the evi-dentiary burden placed upon him by the post-2005 “accident” definition, I would remand the case to the Commission to afford Young an opportunity to present evidence to satisfy the standard discussed in this opinion.

. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2013 Cumulative Supplement. No substantive changes have been made to the relevant statutory provisions since Young’s shoulder injury on October 2, 2009.

. The majority opinion confuses this point, stating that under § 287.020.2, “the ‘accident’ must be caused by a specific event during a single work shift." Maj. Op. at 794. The majority misreads § 287.020.02, and erroneously suggests that the "accident” must be the result of some other event, rather than being the cause of an injury. Section 287.020.02 only requires that “objective symptoms of an injury” be "caused by a specific event during a single work shift”; it does not require that the "accident” be caused in this manner. When *800 read in conjunction with §§ 287.020.3(1) and (2)(a), § 287.020.2 simply requires that an ''accident” constitute "a specific event during a single work shift.” This serves to distinguish an injury by "accident” from an injury constituting an "occupational disease” (which can result from the repeated exposure to injury-causing conditions). § 287.067.

. Although it is unnecessary to discuss the issue in detail, the dictionary definitions quoted by the majority indicate that, as relevant here, a "traumatic event” requires "the application of external force or violence” to the body. Maj. Op. at 793-94. No such "external force or violence” was involved in Young's shoulder injury.

. It appears that the Commission's decision (and arguably, the majority opinion) adopt a fourth definition of "unusual,” under which a strain will be considered "unusual” whenever it produces an injury. The problem with such a definition, of course, is that it is circular, and renders the term "unusual” redundant and unnecessary. Section 287.020.3 already requires that an "unusual strain” cause an injury in order to support a claim for compensation. The word "unusual” must do something more than simply repeat the re *801 quirement that a "strain” cause an injury. See, e.g., Saint Charles Cnty. v. Dir. of Revenue, 407 S.W.3d 576, 578 (Mo. banc 2013) ("When engaging in statutory construction, this Court recognizes that 'every word, clause, sentence, and provision of a statute must have effect,' " and that "the legislature did not insert superfluous words into a statute” (quoting 801 Skinker Blvd. Corp. v. Dir. of Revenue, 395 S.W.3d 1, 5 (Mo. banc 2013))); Bateman v. Rinehart, 391 S.W.3d 441, 446 (Mo. banc 2013).

. It is unclear whether it is necessary to find the term "unusual strain” to be ambiguous before referring to the earlier caselaw interpreting the term. To the extent a finding of ambiguity is necessaiy, the treatise quoted above establishes beyond question that the term "unusual” — as used in this specific context — is subject to multiple potential meanings. This establishes the term's ambiguity. See, e.g., State v. Liberty, 370 S.W.3d 537, 548 (Mo. banc 2012) (" 'If statutory language is subject to more than one reasonable interpretation, then the statute is ambiguous.’ ” (quoting State v. Graham, 204 S.W.3d 655, 656 (Mo. banc 2006))).

. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. banc 2003), clarified the proper standard for judicial review of Commission decisions, and overruled a large number of prior appellate decisions on this discrete point of law. Id. at 223, 224-32. I cite and rely on several such cases in this opinion for legal propositions unrelated to the standard of review, without further notation. In addition, as recognized in Kasl v. Bristol Care, Inc., 984 S.W.2d 852 (Mo. banc 1999), several of the cases cited in this opinion rely on a causation standard which was abrogated by 1993 amendments to the Workers’ Compensation Law. This fact is not separately noted with respect to each such case.

. The existence of this "unusual strain” doctrine was also recognized in, e.g., Robert Domrese & Stephen Graham, Workmen’s Compensation in Missouri, 19 St. Louis U. L.J. 1 (1974):
If a worker strains his back or suffers a hernia while doing his work in the usual fashion, it is to be anticipated. Only if the strain is accompanied by a sudden slip or a fall, or if the strain is abnormal, non-routine, and unexpected, will the injured worker qualify for compensation.
Id. at 23 (footnotes omitted).

. See, e.g., Baker v. Krey Packing Co., 398 S.W.2d 185, 189 (Mo.App.1965) (reversing award of compensation where "[ajccording to [claimant’s] own testimony he was doing exactly the same kind of work he had done practically every working day for approximately five years, and was performing it in his usual and customary manner”); Flippin v. FirstNat’l Bank of Joplin, 372 S.W.2d 273 (Mo.App.1963) (reversing award of compensation based on conclusion that claimant failed to present evidence of an "unusual or abnormal strain” where worker died of heart attack after shoveling snow from sidewalk), overruled by Snuggs v. Steel Haulers, Inc., 501 S.W.2d 481, 486 (Mo. banc 1973).

. See, e.g., Principe v. Great Atl. & Pac. Tea Co., 618 S.W.2d 284, 285-86 (Mo.App.W.D.1981); Schoessel, 539 S.W.2d at 710 (“Here we have a situation where the employee was engaged in his normal work, using the same method he had often used, without any variance of his routine. The only thing unusual was the onset of pain.”); Gold v. Sharp, Kidde, Webb, 564 S.W.2d 612, 614 (Mo.App.1978); Roux v. Dugal’s Big Star Food Store, 510 S.W.2d 810, 812 (Mo.App.1974) (worker who injured back while stooping down to pick up coupon off the floor; "whether the claimant has sustained an accident within the meaning of § 287.020(2) is dependent upon whether there was an abnormal or unusual strain which brought about her injury. Where an employee experiences an injury as a result of normal and customary duties and within the normal routine there is no com-pensable accident."); Mason v. F.W. Strecker Transfer Co., 409 S.W.2d 267, 270 (Mo.App.1966) (noting distinction between "cases [where] there was some evidence of an unusual or abnormal strain,” and "cases where one suffers an injury in the course of his usual work and no abnormal or unusual strain is present”; affirming denial of compensation for back injury sustained while loading hand truck with cargo, where there was no evidence of any "slip, fall or other mishap which caused the injury,” or that there was anything "unusual in the manner in which [claimant] was working.”); Harryman v. L-N Buick-Pon *804 tiac, Inc., 402 S.W.2d 828, 831 (Mo.App.1966) (back injury sustained by automobile mechanic while leaning into vehicle's engine compartment to remove head from engine block; no "unusual or abnormal strain"; "if the employee suffers an injury resultant from a strain while he is engaged in doing his normal or customary duties without variance from his normal routine, it is not a compensa-ble accident within the meaning of the statutes”); Brandt v. E.O. Dorsch Elec. Co., 400 S.W.2d 452, 456 (Mo.App.1966) (affirming finding that claimant "suffered no abnormal or unusual strain” causing back injury; claimant was injured while hoisting light fixture up to scaffolding where he was working); Hall v. Mid-Continent Mfg. Co., 366 S.W.2d 57, 63 (Mo.App.1963) (claimant injured while attempting to remove material which was stuck in machine; "Her method in attempting to loosen the machine was identical with the method used by her on various other occasions and over a period of many months.”).

. Snuggs v. Steel Haulers, Inc., 501 S.W.2d 481, 485 (Mo. banc 1973) (reversing Commission’s denial of compensation, and concluding that truck driver's fall and resulting skull fracture were caused by an "accident,” because driver "was subjected to an unusual, abnormal and continuous physical and mental strain” in having to work for 27-hour period to meet a deadline); Davies v. Carter Carburetor, 429 S.W.2d 738, 747-48 (Mo.1968) (affirming Commission’s award of benefits where claimant injured back when he lost his balance while lifting a tray of automotive parts); Merriman v. Ben Gutman Truck Servs., Inc., 392 S.W.2d 292, 297-98 (Mo.1965) (reversing Commission’s denial of compensation; undisputed evidence established that claimant "was required to assume an extended position with his body which placed him completely out of a normal, usual or routine lifting position" while lifting "a heavy, cumbersome coil of rope”; "The strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident within the meaning of Section 287.020(2)”); Crow v. Missouri Implement Tractor Co., 307 S.W.2d 401, 405 (Mo. banc 1957) (reversing Commission's denial of compensation, and clarifying that "where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall.”); Homan v. Am. Can Co., 535 S.W.2d 574, 576 (Mo. App. 1976) (evidence supported Commission’s finding of an "unusual or abnormal strain” where machine operator injured back when the stack of strips he was attempting to lift to feed into the machine shifted and worker assumed an awkward position and exerted more force than usual as he attempted to stabilize the stack); Wilson v. Kansas City, 479 S.W.2d 135, 140 (Mo. App. 1972) (reversing Commission’s denial of compensation, and finding that claimant’s injuries resulted from "unusual or abnormal strain,” where claimant was injured when boom operator mistakenly lowered tree onto the ground next to the hole prepared for it, rather than into the hole, and claimant attempted to lower tree into hole himself); Herbert v. Sharp Bros. Contracting Co., 467 S.W.2d 105, 108 (Mo. App. 1971) (reversing Commission's denial of benefits where decedent suffered heart attack as a result of assisting in moving and starting 1,500 to 2,000-pound electrical generator; emphasizing that decedent, a supervisor, was " ‘engaged in doing something beyond and different from his normal routine,' ” consisting of " ‘overexertion’ [which] was ‘unusual to the deceased' ”).

. See also, e.g., State ex rel. McDonnell Douglas Corp. v. Ryan, 745 S.W.2d 152, 154 (Mo. banc 1988) (Wolfgeher "h[e]ld[] that a[n] unexpected work-related injury not produced by unusual or abnormal strain is an 'accident' ”); Carter v. Jones Truck Lines, Inc., 943 S.W.2d 821, 824 (Mo.App.S.D.1997); Rector v. City of Springfield, 820 S.W.2d 639, 642 (Mo.App.S.D.1991) (en banc); Arens v. Deleon Corp., 760 S.W.2d 914, 915-16 (Mo.App.W.D.1988); Westerhold v. Unitog-Holden Mfg. Co., 707 S.W.2d 456, 458 (Mo.App.W.D.1986) ("Wolf-geher does not eliminate the statutory requirement of accident but dispenses with the employee’s need to prove abnormal or unusual strain to show an accident.”); Staab v. Laclede Gas Co., 691 S.W.2d 343, 344 (Mo.App.E.D.1985); Matthews v. Roadway Express, Inc., 660 S.W.2d 768, 771 (Mo.App.S.D.1983).

. Wynn, 654 S.W.2d at 89.

. The majority opinion suggests that Patten-gill adopted the post-Wolfgeher understanding of an "accident." Maj. Op. at 796-97 n. 15. That contention simply misreads Pattengill. Although Wolfgeher ultimately rejected the "unusual strain” requirement, it first described the contours of the "unusual strain” doctrine. It is that phrt of Wolfgeher — which describes the "unusual strain” doctrine— which is quoted in Pattengill. 845 S.W.2d at 632. The standard Pattengill derives from Wolfgeher — that an "unusual strain” includes "the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration” — is fully consistent with the other "unusual strain” cases discussed in this opinion. Id. In addition, the other two cases cited by Pattengill clearly adhere to the “unusual strain” requirement as it was applied prior to Wolfgeher. Id. (citing Merriman v. Ben Gutman TruckServ., Inc., 392 S.W.2d 292, 297-98 (Mo.1965) (finding compensable injury when claimant "was required to assume an extended position with his body which placed him completely out of a normal, usual or routine lifting position,” and was injured while "exerting his full force in that position”); Alexander v. Pin Oaks Nursing Home, 625 S.W.2d 192, 193 (Mo.App.E.D.1981) ("Work done in an awkward or unbalanced position, albeit in the execution of a regular assignment, which ■ causes the employee to undergo a stress exceeding the usual and begets an unanticipated strain, results in a compensable injury.”)). *807 The injury-causing event in Pattengill plainly satisfied the well-established understanding of an "unusual strain”: the claimant "was injured while standing on top of a 12-foot ladder and reaching up as far as he could to guide a 300- to 500-pound object suspended over his head by ropes held by four men.” 845 S.W.2d at 632.